CATHERINE N. MASON *vs.* W. H. PERRY, Exr., *et al.*

PROVIDENCE—MARCH 16, 1901.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Charitable Uses.*

Testator bequeathed a fund to "Mount Vernon Lodge of Ancient Free and Accepted Masons in the city of Providence," a corporation, in trust, the income to be expended annually "for the relief of needy members of said lodge, or preferably for the general purposes of the lodge, including now and then, if desired, an appropriation for proper forms of entertainment for the members of the lodge ":—

*Held*, that (1) as the general purposes of the lodge were not charitable, it could not be held to be a charitable institution within the legal meaning of that term. (2) Yet the lodge was competent to hold and administer a charitable trust valid in itself. (3) But in this case, as the bequest might be applied to other than charitable uses, it was invalid.

Following *Kelly* v. *Nichols*, 17 R. I. 322.

BILL IN EQUITY to avoid a trust. Heard on bill and answers.

TILLINGHAST, J. The questions presented for our decision in this case arise out of the thirteenth clause of the will of Samuel N. Amsbury, late of Providence, R. I., deceased. Said clause is as follows:

"Thirteenth. All the rest, residue, and remainder of my property, real, personal, and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, wheresoever situated and howsoever described, including what shall remain after payment of the foregoing

legacies, of my deposits in banks, my corporate stocks, and my notes and mortgages (the bank-books, certificates, and other evidences of the same being now locked within a little hair trunk in my possession), I give, devise, and bequeath unto 'Mount Vernon Lodge No. 4, of Ancient Free and Accepted Masons in the city of Providence,' a corporation created by act of the General Assembly of the State of Rhode Island and Providence Plantations—to have and to hold the same unto the said Mount Vernon Lodge and unto the successors of said lodge in said city of Providence, forever, in trust, nevertheless, and upon the uses and trusts and for the purposes following, namely : That the property thus conveyed in trust to the said Mount Vernon Lodge shall be known as the 'Amsbury Fund,' that it shall be accepted from me as a memorial of my dearly beloved father and mother, Israel and Rachel Amsbury, the former of whom was one of the original incorporators of Mount Vernon Lodge in February, A. D. 1800, and was ever after its true friend, his portrait having been placed permanently upon the walls of the lodge-room, and he, at his death in 1857, at the age of eighty-three, having been the oldest living past master of said lodge ; that the said property thus designated the 'Amsbury Fund' shall be held, managed, and invested, and from time to time, as need be, re-invested, by the said Mount Vernon Lodge, or by its successor in trust, in safe, productive securities ; that the principal thereof shall be allowed to accumulate by the addition to it of all the interest until the said Amsbury Fund shall amount to the sum of ($50,000.00) fifty thousand dollars, or, at least, until it shall have increased twenty-five per cent. of itself ; and that thereafter the income of said fund may be expended annually, without diminution of the principal, by said Mount Vernon Lodge, or by its successors in said trust, for the relief of needy members of said Mount Vernon Lodge, or, preferably, for the general purposes of the lodge, including now and then, if desired, an appropriation for proper forms of entertainment for the members of the lodge."

The principal question raised under this clause of the will is whether it creates a valid charitable trust.   The complain-

ants contend that it does not, and the respondents contend
that it does. That the testator intended by said clause to
create a perpetual trust, instead of making an outright gift
to the lodge, is perfectly clear from the language used.

Assuming, then, as we will, that if the trust is valid it is
such an one as the said lodge is competent to take and admin-
ister, we will proceed at once to consider whether it is a valid
charitable trust. The income of the trust property is to be
expended annually "for the relief of needy members of said
Mount Vernon Lodge, or, '*preferably*,' for the general pur-
poses of the lodge, including now and then, if desired, an
appropriation for proper forms of entertainment for the mem-
bers of the lodge." That the first object thus specified is a
charitable one will hardly admit of doubt; and had the tes-
tator stopped there, or had he fixed the amount to be thus
used, we see no reason why such trust would not have been
a valid and enforceable one. It would clearly have been one
of the classes of trusts which are under the special control of
a court of equity.

We come, then, to the second object specified, namely:
"for the general purposes of the lodge, including now and
then, if desired, an appropriation for proper forms of enter-
tainment for the members of the lodge." In order to deter-
mine whether this constitutes a valid charitable trust in per-
petuity, or, rather, whether the first part of it, which we will
now consider, does, we must inquire whether the general
purposes of said lodge are charitable within the legal mean-
ing of that term; for it is evident that the trustee has full
authority to apply the entire income of the trust property to
such general purposes, regardless of the first object mentioned
by the testator. Indeed, the second object is expressly pre-
ferred by him; and it is fair to presume that the trustee
would seek to carry out the clearly-expressed preference of
the testator. It is pertinent to suggest, in this connection,
that it appears from the attestation clause that the word
"preferably" was interlined, at the request of the testator,
after the will had been drawn and before its execution, thus
showing that the word was used upon reflection, and that it

was the last expression of his intention as to the use to be made of the bequest.   As the claimant corporation is not embraced in that class of corporations or organizations where the name itself indicates that its general purpose is charitable, so that courts will take judicial notice of the fact, such, for examples, as asylums for the poor or the blind, homes for orphans or the aged, institutions for the promotion of education, hospitals, churches, etc. (see *Tucker* v. *Seaman's Aid Society*, 7 Met. 188 ; *Washburn* v. *Sewall*, 9 Met. 280 ; *Bliss* v. *Bible Society*, 2 Allen, 334), in determining whether the general purposes of the lodge are charitable we must, of course, be governed by the evidence before us, which consists of the charter of the lodge, with the amendment thereto, and certain other exhibits.

There is nothing in the charter of the lodge, which was granted in 1872, to show that its general purposes are charitable.    It simply provides that certain persons, naming them, and such others as shall become members of the lodge, are created a body politic and corporate under the name of "Mount Vernon Lodge No. 4 of Ancient Free and Accepted Masons in the city of Providence, and by that name shall be able and capable in law to take, hold, and dispose of property, real, personal, and mixed, to an amount not exceeding twenty-five thousand dollars, and shall have all the powers and privileges, and be subject to all the duties and liabilities set forth in chapter 125 of the Revised Statutes and in the statutes in amendment thereof and in addition thereto."

By an amendment to the charter, passed in 1899, the lodge was made "able and capable in law, as absolute owner or as trustee, to take, hold, and dispose of property, real, personal, and mixed, whether the same be acquired by it absolutely or in trust, by deed, by will, or otherwise, to an amount not exceeding one hundred thousand dollars, and shall have all the powers and privileges and be subject to all the duties and liabilities set forth in chapter 177 of the General Laws of Rhode Island, and in the statutes in amendment thereof and in addition thereto."    Neither of the statutes referred to makes or tends to make the corporation before us a charita-

ble organization. They simply provide for the organization, management, and control of corporations in general, give them certain powers as to the holding and disposition of property, impose certain duties and liabilities upon them, and provide for their dissolution and winding up.

We fail to see that section 2 of the charter of 1872 recognizes the previous existence of the lodge as a corporation, as contended by respondents, or gives it any authority to continue its organization and business as it had previously done, as a corporation. The language of said section, that "said corporation may elect at such times and in such manner and for such periods, as the said lodge has heretofore been accustomed to elect, such officers as may be necessary for the transaction of their business . . . shall continue to hold their respective offices as has heretofore been the custom of said Lodge," naturally refers to the time preceding the charter of 1872, during which it had ceased to exist under the charter of 1800, but had maintained its organization as a lodge under its Masonic charter granted by the grand lodge. If it had been the intention of the legislature to confer the special powers and privileges contained in the charter of 1800, or to have provided for the election of officers, as therein specified, they would doubtless have made some reference thereto, instead of referring to the custom of the lodge in the premises. Moreover, even conceding that the language of section 2 of its present charter does refer to the charter of 1800, it only refers to that part thereof which has to do with the election of such officers as may be necessary for the transaction of its business, and, hence, throws no light on the general purposes of the lodge ; and, therefore, so far as such purposes are specified in any charter, they must be found in that of 1872 and the amendment thereto. In this connection it is pertinent to remark that by an act of the General Assembly, passed at the January session in 1834, the charters of a number of Masonic bodies, naming them, were repealed, and that at the following May session the charters of a number of other Masonic bodies, including that of the Mount Vernon Lodge, were voluntarily surrendered ; and it was

thereupon " *Voted and Resolved,* That the said surrender of the several charters of the said Masonic bodies be and the same hereby are accepted ; and that said charters be and the same are hereby declared vacated, null, and void."

It appears, then, that from 1834 to 1872 said lodge was without a charter from the State, and that it commenced its legal existence, so far as this case is concerned, in 1872.

The only reference to the charitable purposes of the lodge, contained in the by-laws submitted in evidence by the respondents, is found in article 4, section 3, which reads as follows :

" The master and wardens of this lodge shall be a standing committee for charitable purposes, and shall be authorized to draw from the funds of the lodge for the relief of distressed and destitute members of the lodge, a sum not exceeding ten dollars to any one brother, or family, at any one time, unless otherwise authorized by the lodge."

While this clearly shows that one of the purposes of the lodge is a charitable one, it fails to show that this is true as to its general purposes. The original charter, granted by the grand lodge to the claimant corporation in 1799, does not show that the general purposes of the lodge were charitable. It sets out that, whereas, certain persons, naming them, have prayed to be constituted a regular "Lodge of Free and Accepted Masons," *which petition, appearing to us as tending to the advancement of Masonry and good of the Craft,* Know ye, therefore, that we, the grand lodge aforesaid, . . . do constitute and appoint them a regular lodge . . . to receive and enter apprentices, pass fellowcrafts, and raise master Masons, upon the payment of such moderate compensation for the same as may be determined by the said lodge ; also to make choice of a master, wardens, and other officers, annually or otherwise, as they shall see cause, to receive and collect funds for the relief of poor and distressed brethren, their widows and children ; to make their by-laws, to alter, amend, or repeal the same as occasion may require, and in general to do and transact all matters relating to Masonry which to them appear to be for the good

of the craft, according to the ancient usages and customs of Masons.

The preamble to the constitution of the grand lodge makes no mention of charity. Section 5, of article 2, provides for the appointment of six standing committees, no one of which is named for charity. Section 2, of article 7, however, empowers subordinate lodges "to assess and collect dues for charitable purposes and for the payment of the expenses of the lodge." Authority is also conferred by the charter from the grand lodge: "To receive and collect funds for the relief of poor and distressed brethren, their widows and children." There are many other purposes of the order, as shown by the preamble and constitution of the grand lodge, which are evidently not charitable within the legal meaning of that term, but are for the promotion and advancement of Masonry and the good of the craft. This is further shown by the fact that the funds of the lodge are derived primarily from fees and the assessments of its members, and not from gifts and devises, as in the case of a charity proper. In short, the advancement of Masonry, "the good of the craft," and "the rights, benefits, and privileges of its members" seem to constitute the general and controlling purposes of the order, with charity as an incidental feature thereof.

At any rate, so far as appears by the evidence produced, and so far as we can judge by the outward appearance of this ancient and worthy order, and from our general knowledge thereof, it is an institution in whose constructive elements and features and outward work the general characteristics and attributes of fraternal good fellowship, and benevolence in its larger sense, are manifested, rather than those of charity as that term is understood in the law of charitable uses and trusts.

But the respondents contend that under the authorities cited by them the general purposes of the lodge in question are charitable, and, hence, that the gift should be sustained as a valid charitable bequest. Some of the cases relied on would seem at first blush to support this position, but a careful examination thereof shows that in the main they are

cases which were controlled by a different state of facts from those now before us. The first case is that of *King* v. *Parker*, 9 Cush. 71. There it appeared that the constitution of the lodge provided that its *whole income*, including the rents of the premises in question, was required to be devoted to the relief of its poor members and their families, and that it had been uniformly so applied. These facts clearly distinguish the case from the one before us. Moreover, the correctness of the decision has been doubted, if not overruled, in *Old South Society* v. *Crocker*, 119 Mass. 1. Its authority was also seriously questioned in *Bangor* v. *Masonic Lodge*, 73 Me. 438. *City of Indianapolis* v. *Grand Lodge of Indiana*, 25 Ind. 518, was a bill to enjoin the collection of taxes assessed upon the building known as "*Masonic Hall*." The bill alleged that the lodge was a "*benevolent* corporation, and that the building was used for the purpose of universal benevolence and charity." The court held, on demurrer to certain paragraphs of the bill, that the allegations made a case entitling the property to exemption. The statute provided that "Every building erected for the use of any benevolent or charitable institution, &c., and that the tract of land on which such building is situate, not exceeding twenty acres, shall be exempt from taxation."

That case is by no means controlling here. The question is not whether this lodge is a "*benevolent*" corporation in the general meaning of that word, as we presume it is, but whether its general purposes are *charitable ;* for there is a difference between benevolence and charity. "The word 'benevolence,'" as said by Durfee, C. J., in *Pell* v. *Mercer*, 14 R. I. 443, "is a word of larger meaning than the word 'charity,' as it is understood in the law of charitable uses, and therefore, while it includes charitable purposes, may also include other purposes of merely personal good will, which are not charitable." It is true that the court held in that case that the use of the word "benevolence" did not invalidate the trust ; but it was because from the context it was apparent that the word was not used in its general sense, but in the sense of charity. In the Indiana case there is nothing

to limit the meaning of the word "benevolent" in the stat-
ute, and hence there was no occasion for the court to decide,
as it did, that the Masonic order was a charitable institution.
If it was a benevolent institution, that was enough to exempt
its property from taxation under the statute.   So that the
statement that it was a charitable institution was a mere
*dictum*.   In referring to the case, the Supreme Court of
Maine, in *Bangor* v. *Masonic Lodge*, 73 Me. 440, say :

"In *Indianapolis* v. *Grand Master*, 25 Ind. 518, it was
held that a lodge was a charitable institution—but its rules
and regulations were not before the court, nor considered by
it.   The decision rather assumed it as true that it was a
charitable institution, and, assuming it to be so, the court
decided that it was."

In Perry on Trusts, volume 2, section 711, after comment-
ing on certain cases in which the gifts were for the general
purposes of benevolence, the learned author says :

"These cases all proceed upon the maxim that a trust, to
be valid, must be under the control of a court, and the trust
must be of such a nature that its administration can be re-
viewed.   A trust for charity must, therefore, be governed
by some principles that are familiar to the court.   These
principles have grown up in relation to the words 'charity,'
and a 'charitable use,' and to descriptions that come within
them; but there are no rules that can be applied to mere
benevolence, liberality, or generosity, or to any words that
give a discretion and power to the trustees to apply the funds
to any purposes within the whole range of human action."
In *Chamberlain* v. *Stearns*, 111 Mass. 267, it was held that
a devise in trust, to be applied "solely for benevolent pur-
poses" in the discretion of the trustees, did not create a
public charity and was void.

In *Thomson's Executors* v. *Norris*, 20 N. J. Eq. 489, a
question arose with regard to a certain portion of the accumu-
lated income of the estate which was given to his widow, the
will stating that she "shall be authorized and empowered by
her last will and testament to give and devise the same among
such benevolent, religious, or charitable institutions as she

may think proper." The court said : "Such a bequest upon the most familiar principles is not to be sustained except upon the theory that it constitutes a gift to a charitable use. Is the purpose indicated, then, a charity in a legal point of view?" After discussing this question somewhat, the court said : "Upon the question what is or what is not a charitable use, we have no criterion but the rules of common law, and those rules consequently are obligatory upon us.

"Accepting this guide I readily come, on this head, to the same conclusion with the chancellor. The bequest is to '*benevolent*, religious, or charitable institutions.' This is too broad. Benevolence is wider than charity in its legal signification. In *James* v. *Allen*, 3 Mer. 17, the will gave property to ' be applied and disposed of for and to such *benevolent* purposes' as the executors, in their discretion, might unanimously agree on. Sir William Grant, Master of the Rolls, decided this bequest void, remarking, ' that although many charitable institutions are very properly called benevolent, it is impossible to say that every object of a man's benevolence is also an object of his charity.' The ground of the decision was that as the bequest could, consistently with the will, be applied to other than strictly charitable purposes, the court could not execute the trust. In *Williams* v. *Kershaw*, 5 Clark & Fin. 111, note, the devise was to 'such benevolent, charitable, and religious purposes as the executors should, in their discretion, think most advantageous and beneficial.' Upon a review of the authorities the decision of Lord Cottenham was that the introduction of the word ' benevolent' rendered the purposes of the testator too indefinite for judicial execution, and that the gift could not take effect." See also *Hinckley's Estate*, 58 Cal. 457 ; *Chamberlain* v. *Stearns*, 111 Mass. 267 ; *Adye* v. *Smith*, 44 Conn. 60; *Hœffer* v. *Clogan*, 63 Am. St. Rep. 241, and note.

*Staines* v. *Burton*, 70 Am. St. Rep. 788, cited by respondents, is a case in which the court found from the will, taken as a whole, that the testator intended to make a purely charitable bequest.

*Hibernian Benevolent Society* v. *Kelly*, 28 Ore. 173, holds

that a society or institution may be charitable within the meaning of the law of that State exempting the property of charitable institutions from taxation, though its benefits do not extend to the general public, but are restricted to its own members and their families.　We see no occasion to criticise such a finding,

*City of Petersburg* v. *Benev. Mechanics Ass'n*, 78 Va. 431, is practically to the same effect as the case last cited.　It was there insisted by counsel for the plaintiff that the property of defendant corporation was not exempt from taxation, because the use to which it was to be applied was not *a public* use. But the court held that it was not essential to charity that it should be universal.

In *Murphy's Estate*, 184 Pa. St. 310, the court held that the word "benevolent" which was used by the testator in connection with the words "charitable and religious" was intended by him to be synonymous with "charitable."　In this respect the case is like *Pell* v. *Mercer, supra.　Incorporated Society* v. *Richards*, 1 Drury & Warren, 258, has no particular bearing upon the case before us.　The bequest was to the "Incorporated Society in Dublin for promoting English Protestant Charter Schools in Ireland, and their successors forever."

The court held that a devise to the plaintiff in its corporate character for its valid charitable purposes could not be less operative than a devise to any other corporation upon trust for the same charitable objects, and sustained the gift.　In *Duke* v. *Fuller*, 9 N. H. 536, the court found that the fund in question had been received by the lodge for charitable uses, and hence that upon the dissolution of the lodge said fund could not rightfully be distributed among the members or abandoned, but should still be holden for its due application. The language of the by-law under which the fund was collected was similar to that in the statute of charitable uses of 43 Elizabeth.　While we are free to say that this case furnishes support to the respondents' claim, we do not think it is controlling.　An examination of the later case of *Goodale* v. *Mooney*, 60 N. H. 528, shows that a more liberal construc-

tion is put upon the meaning of the word "benevolent" by the courts of that State than by most other courts. In that case the language used in the will was:

"I place the remainder of my property in the hands of my executors, to be distributed by them after my decease among my relatives and for benevolent objects in such sums as in their judgment shall be for the best. In case the first-named executor, John H. Goodale, shall find himself in need of means, he can take from the residue above named the sum of three thousand dollars." The court held that the words "for benevolent objects" should be construed to mean the same as "for charitable objects," although it was recognized that to so hold was contrary to the Massachusetts decisions. A careful reading of the opinion, however, shows that the court found satisfactory evidence from the will that the term "benevolent objects" was used by the testator as synonymous with "charitable objects." For the court was careful to say at the close that: "On the question whether a bequest for a benevolent purpose not charitable in the technical sense, would be void, we express no opinion."

*Babb* v. *Reed*, 5 Rawle, 150, is clearly against the respondents. It holds that an association for the purpose of mutual benevolence amongst its members only is not an association for charitable uses. Sergeant, J., in delivering the opinion of the court, said: "Its objects are stated to be the employment of its funds in purposes of mutual benevolence amongst its members and their families; but these cannot be deemed charitable uses under the common law of Pennsylvania or the statute 43 Elizabeth."

*Everett* v. *Carr*, 59 Me. 325, does not support the respondents' position. The bequest in question there was to the "Rising Virtue Lodge," to the "St. Andrews Lodge," and to the "Mount Moriah R. A. Chapter," for charitable purposes, each the sum of five thousand dollars. All of these lodges were incorporated, and were expressly authorized "to take and hold for charitable and benevolent uses" real and personal estate to a certain value exceeding the legacies in the will. The court held the bequest to be valid, and we fail

to see how it could have held otherwise. But the respondents in the case at bar evidently find special comfort in the following expression used by the court in that case: "Accordingly, legacies to Masonic lodges have been upheld by repeated decisions of courts of the highest respectability," citing *Duke* v. *Fuller*, 9 N. H. 536, and *Indianapolis* v. *Grand Master*, 25 Ind. 518. This general remark, however, had nothing to do with the merits of the case, and, hence, was only a *dictum*, as is shown in the subsequent case of *Bangor* v. *Masonic Lodge*, 73 Me. 440, where the court, referring to the previous case, said: "All that was decided was that incorporated Masonic lodges might receive, in trust, property devised for charitable purposes. They could hold property as trustees, as towns or individuals can, but that does not make the towns, lodges, or individuals public charitable institutions within the statute. They are corporations established for other purposes, and holding specified property for certain purposes. They hold, as corporations, their own property in their own right, for such purposes as the law permits; and trust property in trust, as other trustees. In the will of Dwinel there were legacies to Everett and others, 'in trust,' to be used solely and purely for charitable purposes. Neither devise altered the relations of the devisees so as to make either the lodges or the individual trustees thereby 'charitable institutions,' and therefore to be exempted from taxation. The only question then was whether the lodge could take as trustee. That it does charitable acts is not to be questioned, but if charity was not the primary and exclusive object of its existence, and it was not a purely benevolent, charitable institution, the purpose and objects of its existence remaining unchanged, the receiving a devise as trustee would not make it a public, charitable institution under the statute, when, without and before such devise it was not, any more than a bequest to a town for literary purposes would make such a town a literary institution."

If, in the case at bar, the bequest had been made to the lodge for its general purposes, and no trust in perpetuity had been created, it would doubtless have been a valid bequest, as

the testator had the right to bestow his absolute benefactions as he pleased. He also had the right to make a bequest to said lodge in trust for charitable purposes. But, as held in the Maine case, the giving to said lodge of a devise as trustee did not have the effect of changing the purposes of the lodge into a charitable institution. It therefore became necessary, in order to create a valid trust in perpetuity, that the bequest should be made for purposes which were clearly charitable.

In *State* v. *Addison*, 2 S. Car. 499, the lodge was held to be exempt from taxation as being a charitable society under the statute, mainly on the ground that under an ordinance of the city council it had thus been exempted for three-quarters of a century. In *Mayor* v. *Solomon Lodge*, 53 Ga. 93, it was held that a Masonic lodge was a charitable institution under the statute of that State. It appears that lodges had been so recognized and styled by the General Assembly of the State as far back as 1796. The court, therefore, said: "Assuming, as we are authorized to do, that a Masonic lodge is a charitable institution, it necessarily follows from the express words of the statute, that *any house* belonging to it is exempt from taxation." See also *Cruse* v. *Axtell*, 50 Ind. 49.

In *Willey's Estate*, 56 Pacif. Rep. 550 (Cal.), it was contended on behalf of the heirs that the provisions in the will for the payment of certain sums to certain lodges were invalid because the lodges were not charitable bodies, and because they were not bound to use the bequests for charitable purposes. The court held that it was not necessary to determine whether a Masonic body is or is not a charitable institution; for "it is not necessary that a trustee for charitable purposes should be itself a charitable institution." "It is sufficient," said the court, "if a bequest be for a charitable purpose." "In each of the instances the bequest is made to the Masonic body '*for the use of the widows' and orphans' fund of said lodge, or chapter, or commandery.*' This is a compliance with the legal essence of a valid charity; that is, that it is public, and is vague and uncertain as to the individuals to be benefited or relieved."

We agree fully with this decision; and had the use of the bequest in the will before us been limited, as it was in that case, we should find no difficulty in sustaining it. For there can be no doubt that the lodge is competent to hold and administer a charitable trust.

(1)   We have thus gone over most of the cases relied on by the respondents in support of their contention that the general purposes of the lodge in question are charitable, and we do not find that they sustain it. They do not hold as a general proposition, except in the Indiana cases, that the Masonic order is a charitable order in the sense which that term is understood and defined in the law relating to charitable trusts, but simply, or mainly, at any rate, that under the language used in the bequests therein set out, or under the terms of the charter or articles of association of the particular lodge, the gifts were sustainable as charitable bequests. As to the Indiana cases, they are clearly not in accord with the general doctrine, and we should not feel warranted in following them. To simply assume that a thing is so, and, therefore, decide that it is so, as was done in the first case cited from that State, does not strike us with much favor. The second case evidently followed the first as to the assumption aforesaid, and held the lodge to be a charitable organization independently of the statute, although in that case there was no occasion for so holding, as the statute expressly classed it as such.

The case of *Bangor* v. *Masonic Lodge, supra,* which is specially relied on by complainants, contains a full and careful discussion of the question now under consideration, and decides that a Masonic lodge is not a charitable or benevolent institution within the meaning of the statute of that State, which provides that "the real and personal property of all benevolent, charitable, and scientific institutions incorporated by this State shall be exempt from taxation." The charter of the lodge in that case authorized it to hold property for charitable and benevolent uses. By virtue of its charter from the grand lodge it was authorized "to receive and collect funds for the relief of poor and distressed brethren, their

widows and children ; and in general to transact all matters relating to masonry which may to them appear to be for the good of the craft, according to the ancient usages and customs of masons." But the court held that it was not exempt from taxation. Many of the cases relied on by respondents are carefully reviewed in the opinion, and we fully concur with what is there said as to the force and effect of said cases. See also *City of Newport* v. *Masonic Ass'n*, 49 L. R. A. 252 ; *Phila.* v. *Masonic Home*, 23 L. R. A. 545. We think the weight of authority, as gathered from the foregoing cases, is against the contention of the respondents, and that, taken in connection with the proof submitted, the lodge in question cannot be held to be a charitable institution within the legal meaning of that term ; and, hence, that a bequest to it in perpetual trust for its general purposes cannot be sustained.

But, even assuming for the purposes of the argument that the general purposes of the lodge before us are charitable, we still fail to see how the bequest in question can be held to be charitable. For, in connection with the bequest for such general purposes, the testator includes occasional " appropriations for proper forms of entertainment for the members of the lodge." Under this provision there can be no doubt that it would be competent for the lodge to use such part of the property bequeathed as it might see fit for purposes which are in no legal sense charitable. And it is well settled that when property is given in trust for purposes that are charitable, but these purposes are joined with words which authorize the trustee to expend the fund, or some indefinite portion thereof, for purposes which are not charitable, the trust is void. For if the fund is not apportioned by the donor the trustee may expend such part thereof as he sees fit for the purpose which is not charitable, and at the same time carry out the express provisions of the will. 2 Perry on Trusts, § 711 ; *Pell* v. *Mercer*, *supra*, pp. 442–3. See also *Webster* v. *Wiggin*, 19 R. I. 73. In *Coit* v. *Comstock*, 51 Conn. 352, which is a leading case on the general questions here involved, the court says :

" But the bequests as they are, although some portion of the

income is to be devoted to a charitable purpose, cannot be supported. If it were otherwise it would be in the power of an individual to make a perpetuity of property to any extent by devoting some small portion of the undivided income thereof to some charitable purpose. A little charity, in such a case, cannot preserve the entire bequest."

Substantially the same doctrine was held in *Kelly* v. *Nichols*, 17 R. I. 322. There this court held that "If an ascertainable portion of a fund or an estate be given on a void trust and the residue on a good trust, the residue has the benefit of the failure of the prior trust." But "If an *unascertainable* portion be given upon a void trust and the residue upon a valid trust, the whole fails." See also the later opinion in the same case, written by Stiness, J., 18 R. I. 62.

But the respondents argue that there is no warrant whatever for complainants' contention that the words now under consideration were intended to provide for the "social and convivial delectation" of the members. They also argue that the provision for entertainment is optional and voidable. They say: "The word '*proper*' suggests, rather, entertainment in harmony with the general purposes of the lodge, which might be moral, intellectual, or spiritual. If the provision now and then would permit the lodge to furnish a Thanksgiving dinner, to which tickets would be given to members who could not afford to buy them, it is a charitable provision in intent. But the provision is merely a suggestion of the testator, left entirely optional with the lodge, and for the use of a small amount of the income. It is safe to presume that the lodge, in accepting the gift after this contest, would provide, upon a suggestion from the court, as it had the legal right to do, that no portion of the income should be used for entertainment."

This is a forced and unnatural construction of the language used, and we cannot adopt it as expressing the meaning and intent of the testator. In the construction of wills, the language used is to be taken in its plain and ordinary sense in the absence of a manifest intention to the contrary. 29 Am.

& Eng. Ency. of Law, 345, and cases in note 1.    The phrase "proper forms of entertainment," in the clause referred to, has no relation to the needy members of the lodge as a special class, but manifestly was intended to apply to the lodge as a whole and to authorize it to provide such forms of entertainment, both for body and mind, as to it might seem proper. If it should see fit to limit its discretion to the furnishing of some form of "moral, intellectual, or spiritual" entertainment, as suggested, or to a frugal collation, it could do so; but if, on the other hand, it should decide that an expensive banquet at stated periods, or an excursion, was a proper form of entertainment, it would have an undoubted right to provide for these out of the income from said bequest.    At any rate, the phrase "proper forms of entertainment" would include such as are customary in Masonic bodies, and we fail to see how a court of equity could regulate or control the discretion of the trustee in regard thereto.

Webster defines "entertainment" as "the act of receiving as host, or amusing, admitting, or cherishing; hospitable reception; hospitable provision for the wants of a guest; especially provision for a table—a feast; a formal or elegant meal," etc.; "that which amuses or diverts."

The Century Dictionary defines the word in part as "the act of furnishing accommodation, refreshment, good cheer, or diversion; mental enjoyment; instruction or amusement afforded by anything seen or heard, as a spectacle, a play," etc.; "the act of providing gratification or diversion, as the entertainment of friends with a supper," etc.

These definitions are sufficient to show that "entertainment" is by no means synonymous with charity in its legal sense.

As to the suggestion that the lodge in accepting the bequest after this contest would provide, upon a suggestion from the court, that no part of the income should be used for entertainment, we need only reply that if the bequest is a valid one we have no right to direct the trustee to disregard any of the testator's intentions as to the application thereof. Our only jurisdiction in such a case is to see to it that the

trust is faithfully executed.   To limit and restrict the trustee in the manner suggested would be to defeat the plainly expressed intention of the testator.   And we need hardly say that it is not the province of the court to make wills for people, but only to interpret those which they have made.   If the bequest·in this will is not a charitable one, this court cannot make it such by alteration.   *Atkinson* v. *Staigg*, 13 R. I. 728.   As said by the court in *Rotch* v. *Emerson*, 105 Mass. 433 : "The power of the court to administer the trust and direct its objects must find its warrant in the intention of the testator as expressed in the will.   If those, upon a fair and reasonable interpretation, include what is not a charity, the court cannot, by its power of administration, exclude it ; but the whole must fall.   The bequest must be limited to the purposes of a charity by interpretation, if at all ; and not by the power of the court over it after the trust is established."

But the respondents further argue that the final words of the residuary clause are not imperative—that the power is a discretionary one, to be exercised or not, in the judgment of the trustee.   This is evidently so ; and therein lies one of the difficulties which we have already considered, of holding the bequest to constitute a charitable trust.   The fund *may* be used for this purpose, or it may not.   And, as held by this court in *Kelly* v. *Nichols*, 17 R. I. 323, " When under a will a bequest *may* be applied to other than charitable uses, the bequest is invalid."

We agree with the respondents' contention that "where a legacy is given to an incorporated charitable body for the benefit of the legatee, a mere suggestion on the part of the testator as to the· manner of enjoying the benefit, creates a moral and not a legal obligation."   But the doctrine is not applicable here, first, because, as already said, the lodge is not an incorporated charitable body ; and, second, because the language now under consideration was not a "mere suggestion on the part of the testator as to the manner of enjoying the benefit," but the conferring of an absolute discretion in regard thereto.

As pertinently argued by the complainants, "If it is a sug-

gestion, then the entire use for "*general purposes*," of which the use for "*entertainment*" is a part, is a suggestion. The entire use is made optional by the use of the disjunctive "*or*." This, as already intimated, is the fatal feature of the trust or gift, because it empowers the lodge in its discretion to apply the entire income to purposes which are not charitable. And it is well settled that in order to create a valid charitable trust in perpetuity the language employed must require the fund to be expended for charitable purposes only. And it must not be left in the discretion of the trustee to spend the money for a charitable or a non-charitable purpose. In other words, the devotion of the fund to charity must be clear and certain. 2 Perry on Trusts, section 732. As this is clearly not so in the case before us, we feel constrained to hold the bequest invalid.

As to the suggestion of respondents that the trust, being for charitable uses, is not void because it is indefinite, and that it is competent for the court to resort to its *cy pres* jurisdiction in carrying out the charitable intention of the testator, it is sufficient to reply that, in order for the court to act under that jurisdiction, it must appear that the bequest is a charitable one, which is not the case here.

Of course, we are not unmindful of the rule that courts are bound to look with favor upon all charitable bequests and to carry them into effect, if this can be done consistently with the rules of law. But no forced construction will be adopted in order to uphold the gift.

A number of other questions have been raised and ably argued by counsel, but as the one which we have considered is decisive of the case, it is not necessary to consider them.

We can but express our regret that we are unable to sustain the bequest of the testator, and thus aid in carrying out his clearly expressed intention of promoting the general purposes and welfare of said lodge. But, as the law will not permit property to be perpetually tied up for other than charitable uses, and as the testator has inseparably mingled with his gift for charitable uses a gift for uses which are

clearly not charitable, we feel compelled to hold the entire bequest invalid.

*Ballou & Tower*, for complainants.

*Cooke & Angell and George A. Littlefield*, for respondents.