Adolph Sutro died in the city of San Francisco August 8, 1898, leaving a last will and testament dated May 22, 1882. He left surviving him six children, and died the owner of a large amount of property. To his children he bequeathed the sum of ten thousand dollars each, and the residue of his estate, specially exempting, however, from said residue a portion thereof consisting of about 1200 acres of land within the city and county of San Francisco known as a part of the Cliff House Ranch and a part of the San Miguel Rancho, which the testator devoted to charitable uses under a trust for that purpose which he assumed to create in his will, and which tracts were referred to in his will as numbered I and II.
The clauses of his will as to such trust, material to be considered here, are as follows: By paragraph XXV thereof the testator declared: "I will and direct that the title in fee of said parcels of land marked I and II last hereinbefore described and each thereof shall go in trust into the hands of my executors, to be by them preserved and managed for and during the period of ten (10) years after my death, and then by my executors to be conveyed in trust, to the board of trustees hereinafter provided for, but not to be sold or disposed of by any one having the charge or management thereof during the life of the last survivor of my children mentioned in this will, and at the death of said last survivor, or as soon thereafter as may be deemed, by the board of trustees hereinafter mentioned, for the best interest of the trust hereinafter created and appointed, I will and direct that the bulk of the whole of said parcels of real estate marked as aforesaid I and II shall be sold by said board of trustees, as speedily as possible, but in the manner they shall deem best, for realizing the largest amount, and the funds realized from such sales, shall be managed and applied by said board of trustees for such charities, institutions of learning and science and for premiums to be set apart for distinguished scholarships and scientific discovery and inventions as shall be directed by my executors."
To provide for a more specific determination of the purposes to which the funds were to be devoted, the will further declared that a decision of the executors upon that subject should be filed in the county recorder's office within three *Page 731 
years after his death, and that if the executors failed to give such direction, then the board of trustees provided in the will should at once organize and within twelve months thereafter select the application to be made of the funds comprising the trust. To enable them to act more intelligently in selecting the purposes of the trust they were further directed to advertise in the newspapers of San Francisco, New York, and London, offering a prize of fifteen hundred dollars for the best treatise upon the subject, one thousand dollars for the second best and five hundred dollars for the third best. They were expressly prohibited from directing the application of any of the funds "to any institution, or charity, or purpose, which is in any degree sectarian or in the management of which any priest, clergyman, minister or rabbi, or other religious officer, shall have any voice or control."
The final board of trustees appointed for the execution of this trust was to consist of thirteen members, — namely, the governor of the state, the chief justice of the supreme court, the presiding judge of the superior court of the city and county of San Francisco, the United States circuit judge for the district of California, the mayor of San Francisco, the president of the San Francisco chamber of commerce, the president of the board of regents of the California University, and their successors in office, and six other members to be chosen by the above-named officers, three from the leading bankers of San Francisco and three from the male descendants of the testator or of his brothers bearing the name of Sutro. The property which was to be devoted to the trust thus to be ascertained comprised the bulk of the testator's estate, and it was further provided, in effect, that it should remain undisposed of until the death of the last survivor of his children, and that upon that event it should "vest in said board of trustees and their successors, in trust, that the same may be sold and the proceeds therefrom be applied to the uses and purposes, charitable, educational and other, which are, in this my will, provided and specified."
On October 1, 1898, Clara A. Sutro, Edgar E. Sutro, Kate Nussbaum, and Rosa V. Morbio, children of the testator, brought an action against Emma L. Merritt and W.H.R. Adamson, "as trustees under an instrument purporting to be the will of Adolph Sutro," and Emma L. Merritt, George *Page 732 
W. Merritt, her husband, and Charles W. Sutro, individually, the said Emma L. Merritt and Charles W. Sutro and plaintiffs being the only children of said Adolph Sutro, deceased. The complaint alleged that the plaintiffs were the owners in fee of an undivided two-thirds interest in the real property in controversy; that the defendants Emma L. Merritt and Adamson claimed as trustees under the Sutro will and as such trustees claimed an estate and interest in the property adverse to plaintiffs; that the other defendants Emma L. Merritt and Charles W. Sutro, individually, claimed the property adversely to the plaintiffs, but that all claimed without right as to said undivided two thirds of said property. The prayer was that the claim of the defendants and all question as to the validity of any devise or trust under the aforesaid will be finally determined, and that it be adjudged that the defendants, as trustees or otherwise, had no right, title, or interest in the property. This action was begun and brought to trial and judgment before the will was admitted to probate. The defendants as trustees set up the provisions of the will in opposition to the complaint. Judgment was rendered in favor of plaintiff, declaring the plaintiffs owners in fee of a two-thirds interest in the property and that the trust attempted to be created by the will of Adolph Sutro was void, because, as the conclusions of law declare, the fund "was not intended wholly for charitable purposes, but was intended for purposes partly charitable and partly other than charitable, and that the purposes for which it was intended are vague and uncertain and cannot be made certain." No appeal was ever taken from this judgment and it has become final. It was entered on June 19, 1899.
On May 23, 1903, the persons who were plaintiffs in that action filed a petition in the matter of the administration of the estate of Sutro, asking for partial distribution to them of the property of said estate, including therein the property devoted by the will to the trust therein attempted to be created. Upon the hearing of this petition the judgment in Sutro v. Merritt was set up as an adjudication of the matter, and the validity of the trust provisions of the will were again challenged. The court made its decree of distribution in accordance with the prayer of petitioners and based the decision upon two grounds: 1. That the judgment in the case *Page 733 
of Sutro v. Merritt aforesaid was a conclusive adjudication of the title of the petitioners as heirs at law and of the invalidity of the trust; 2. Treating the question of the validity of the trust as not concluded, the court again declared that it was invalid.
The appeals are taken from that portion of the decree of partial distribution disposing of the property which by the will is to be devoted to the purposes of the trust therein attempted to be created; and also from an order denying the appellants' motion for a new trial.
It is not contended that the trust in question comes within the rule laid down in the Estate of Fair, 132 Cal. 523, [84 Am. St. Rep. 70, 60 P. 442, 64 P. 1000], that a trust to convey is void. Sections 847 and 857 of the Civil Code, involved in that case, apply only to private trusts and not to trusts for charitable uses. If the trust in question is a trust for charitable uses, it is not void because of the provisions of the aforesaid sections of the Civil Code. In Estate of Hinckley,58 Cal. 457, it was declared that charitable perpetuities are lawful, notwithstanding the provisions of section 715 of the Civil Code relating to perpetuities in general. It was held that the last-named section did not apply to charities. This conclusion was based on the principle that the sections of the Civil Code first referred to, declaring what should constitute valid trusts as applied to real property, pertain to private trusts and did not include trusts for charitable uses. At common law trusts to convey to charitable uses were valid, and in the absence of any constitutional or statutory provisions to the contrary the common-law rule relative to them applies in this state. (Pol. Code, sec. 4468; Estate of Hinckley, 58 Cal. 457.) It is conceded by the respondents that the principle of the Fair case has no application to trusts to convey to charitable uses.
A large part of the argument has been devoted to a discussion of the proper construction of section 738 of the Code of Civil Procedure, and to the effect of the former judgment in the case of Sutro v. Merritt. It is claimed, on the one hand, that section738 was not intended to permit of the determination, as between the heirs and devisees, of questions relating to the validity of the provisions of the will, or which would determine their rights, as between themselves, in advance *Page 734 
of the final decree of distribution of the estate in the probate proceedings. On the other hand, it is contended that that section was intended for the very purpose of providing for such a determination. We do not find it necessary to enter into a discussion of these questions. We are of the opinion that, as an original question, the provisions of the will attempting to create a trust for the purposes therein declared were invalid, for the reasons stated by the superior court in its conclusions of law above quoted from the record in the case of Sutro v.
Merritt.
It may be conceded, for the purposes of the case, that it would have been possible, under the scheme provided, to ascertain with certainty the precise purposes to which the trust funds were ultimately to be devoted. The elaborate plan for the determination of the specific purposes, if carried out, might have resulted in a clear and certain statement as to those purposes. The fatal objection to the validity of the trust is that it authorizes the funds to be devoted to purposes other than charitable and that it leaves the question whether it is to be devoted to charitable purposes, or to other uses not charitable, entirely in the discretion of the executors, or, in case of their default, in the discretion of the board of trustees.
The constitution declares that "No perpetuities shall be allowed except for eleemosynary purposes," (Art. XXII, sec. 9.) The word "eleemosynary" in this passage is synonymous with "charitable," as the latter word is used and understood in treatises and decisions upon the subject of trusts. The rule upon this subject was stated in the decision of this court in Estateof Hinckley, 58 Cal. 509, in these words: "Where a bequest is made for charitable purposes and also for purposes of an indefinite character, which are not charitable, the whole bequest will be void. If, for instance, a bequest is made for such charitable or other purposes as the trustees should think fit, the whole bequest will be void for uncertainty," citing Tudor on Charitable Trusts, 223. This statement of the rule is well established by a long line of cases on the subject. In Mason v.Perry, 22 R.I. 475, 494, [48 A. 671], the court says: "It is well settled that, in order to create a valid charitable trust in perpetuity, the language employed must require the fund to be expended for charitable purposes only *Page 735 
and it must not be left in the discretion of the trustees to spend the money for a charitable or non-charitable purpose. In other words, the devotion of the fund to charity must be clear and certain." In the case of In re Shattuck's Will, 193 N.Y. 446, [86 N.E. 455], decided by the New York court of appeals, the provision was that the trust funds were to be "paid over to religious, educational, or eleemosynary institutions" as the trustees should deem advisable. The court says: "The word `educational' does not necessarily describe a public or charitable institution. . . . An `institution' is an established or organized society or corporation. It may be private in its character, designed for profit to those composing the organization, or public and charitable in its purposes. An institution is a mere organism for the accomplishment of an object, and the existence of such organism cannot in the nature of things make such object definite. The use of the word `institution' does not point to a public, as distinguished from a private organization, and there is nothing whatever in the will, except in the words `religious,' `educational,' and `eleemosynary,' that points in the slightest degree to a charitable use." And after holding that under the will the trustee could devote the proceeds of the trust fund to purposes which would be in whole or in part private and individual and not public and charitable, the court says: "The possible devotion of the income of said trust in whole or in part to private use necessarily affects the entire gift and requires that the same shall be held invalid." In Chamberlain v. Stearns, 111 Mass. 268, Gray, J., quotes from the opinion of Sir William Grant in James
v. Allen, 3 Meriv. 17, the following in regard to a trust of this character: "If it might, consistently with the will, be applied to other than strictly charitable purposes, the trust is too indefinite for the court to execute." In Kendall v. Granger, 5 Beav. 300, the court says: "It is not a question whether the trustees may apply it (the fund) to a charitable purpose, but whether, by the words of the will, they are bound to do so. The decisions go to this further extent, that they must have no option between a charitable and any other purpose." Quotations could be multiplied indefinitely, announcing this doctrine. It is thus summarized in 2 Perry on Trusts, sec. 711: "There are other cases where legacies are given in trust for purposes that are *Page 736 
clearly charitable; but these purposes are joined with words that authorize the trustees to expend the fund for general purposes which are not charitable. If the fund is not apportioned by the donor, the trustees may expend the whole for one purpose or another which is not charitable, and at the same time execute the exact power given them under the will. In such cases the courts cannot establish and administer the trust as charitable."
With respect to what purposes are deemed charitable, the authorities show that those enumerated in the will of Adolph Sutro are not exclusively of that character. Mr. Perry approves the following general definition of a charitable trust given by Gray, J., in Jackson v. Phillips, 14 Allen, (Mass.) 556. "A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." This definition, as applied to charitable perpetuities, must be read with the opening phrase constantly in mind that the benefit is for "an indefinite number of persons," and not for any particular person or persons, and it must be for all persons falling within a described class, indefinite in number. The subject will be elucidated by a statement of the cases showing the subjects which have been held to be not charitable in character. The following described purposes have been so declared; the words in italics, where more than one descriptive term is used, being those which were held to vitiate the gift: "Charitable or public," Blair v. Duncan, L.A. App. Cas. [1902] 37; "The religious, moral, and social welfare of the people," Livesey v. Jones, 55 N.J. Eq. 204, [35 A. 1064]; "The advancement of civilization generally," Owens v. MissionarySociety, 14 N.Y. 380, 409, [67 Am. Dec. 160]; "Undertaking of general utility," Kendall v. Granger, 5 Beav. 300; "Charitable orreligious institutions or societies," Grimond v. Grimond, L.R. App. Cas. [1905] 126; "Charitable or philanthropic purposes." Inre Macduff, L.R. 2 Ch. Div. [1896] p. 451; "The establishment of a school at Montrose *Page 737 
for the education of children," Attorney-General v. Soule,28 Mich. 153; "Charitable or other purposes," Ellis v. Selby, 7 Sim. 352, 362, 1 Myl. Cr. 286, 298; "To such charitable or public
uses or purposes, person or persons, as may be selected," Vezey
v. Jamson, 1 Sim. Stu. 69; "Benevolence and liberality," Morice
v. Bishop of Durham, 9 Ves. 399, 10 Ves. 521; "Benevolent,
charitable and religious institutions," Norris v. Thompson,19 N.J. Eq. 308; "Charitable, religious, or other societies, institutions, persons, or objects, in connection with the Roman Catholic faith," Minty v. Bourne, L.R. 1 Ch. Div. [1909] 567; "Such charitable or other institution as is most needed," Taylor
v. Keep, 2 (Bradw.) Ill. App. 275. In Estate of Hinckley, 58 Cal. 511, a trust for "human beneficence and charity" was held valid on the ground that the use of the word "and" to join the words "beneficence" and "charity," in connection with the context, showed that the two words were used synonymously, and the maxim,noscitur a sociis, was applied. The different objects named in the Sutro will cannot be thus joined. They are not synonymous, and the sentence in which they occur is, in effect, disjunctive. It is to be noted that those of the cases just cited which hold that the phrase "religious or educational institutions" indicates a non-charitable use, and also the case of Shattuck's Will, to the same effect, do so on the ground that it would permit the fund to be devoted to existing institutions which, though religious or educational, might be maintained for private profit and therefore not charitable. They are to be distinguished from other cases where a trust for the purpose of establishing
institutions has been held valid because the context showed that none but charitable institutions were intended.
Coming now to the particular purposes authorized by this will, we find that they include "charities," "institutions of learning and science," and "premiums" to be set apart for "distinguished scholarships," for "scientific discovery," and for "inventions." The term "charities" would, of course, include charitable uses, and perhaps could not be construed to refer to any other. But institutions of learning and science may or may not be charitable, according as the institution is carried on for public benefit alone, or for private gain. (Spence v. Widney, (Cal.) 46 P. 466, in which a rehearing was granted, but not on this point; Attorney-General v. Hewer, *Page 738 
2 Vern, 387; Attorney-General v. Newcomb, 14 Ves. Jr. 1;Attorney-General v. Soule, 28 Mich. 153.) The will would allow the fund to go to institutions of learning and science already established, whether charitable or not. And while it may be true that the encouragement of scientific discovery and inventions might, in a very general way, tend to promote the benefit of mankind and the advance of civilization, yet, in view of the decisions above cited, it cannot be said that these purposes are in themselves necessarily charitable or eleemosynary, in the sense in which these words are used in the constitution and in the authorities on the subject. Some kinds of scholarship have no direct relation to charity or the general welfare. Scientific discoveries might be of such a nature that they would be hurtful and evil in tendency and effect. Inventions are not necessarily useful. Both scientific discoveries and inventions may be of such a character as to inure entirely to the personal profit of the discoverer or inventor, or of other persons interested or affected.
The other passages in the will itself, referring to these objects, demonstrate that the testator had in mind purposes other than charitable. The trustees are expressly forbidden to apply any of the fund to "any institution, or charity, or purpose" which should be in any degree sectarian. The final direction is that when, upon the death of his last surviving child, the absolute title to the property should vest in the ultimate trustees, it should be sold and the proceeds applied "to the usesand purposes, charitable, educational and other, which are, in this my will, provided and specified." These passages show that in his estimation the purposes specified were not exclusively charitable in character. There is nothing in other parts of the will to show that the "other" purposes referred to were intended to be charitable. Without violating the directions of the will the entire fund could be devoted to institutions of learning and science carried on for private gain, of which there are many, or to the encouragement of abstract scientific discoveries not tending to benefit mankind, or to reward inventions calculated to profit the inventor alone, or those to whom he should transfer his secret or patent. The trustees could apply a part to each of the different objects, or they could apply the whole of it to one of them to the exclusion of any other. These objects not being exclusively *Page 739 
or necessarily charitable, it follows, under the rule stated, that the entire trust was invalid, and that the decree of distribution was correct, independent of the effect of the previous judgment in the case of Sutro v. Merritt.
This conclusion makes it unnecessary to consider the other questions so elaborately presented and discussed. The motion for new trial was properly denied on this ground.
The decree and order appealed from are affirmed.
Melvin, J., Henshaw, J., and Angellotti, J., concurred.