[Sac. No. 2078. Department One.—February 6, 1914.]

In the Matter of the Estate of FLORENCE A. COLEMAN, Deceased.

CHARITABLE USES—SUSPENSION OF POWER OF ALIENATION.—The code provisions prohibiting the suspension of the power of alienation beyond prescribed limits have no application to charities and charitable uses.

ID.—BENEFICIARIES OF CHARITABLE GIFT—DIRECT BENEFIT TO ANIMALS. It is not essential to the validity of a gift to charitable uses that the persons constituting the general public be the direct beneficiaries of the gift. Gifts to benefit man through the medium of benefiting animals are good charities.

ID.—BEQUEST TO MUNICIPALITY—FOUNTAIN FOR BENEFIT OF ANIMALS AND BIRDS.—A pecuniary bequest to the city of Sacramento, "to be used in erecting a suitable fountain for the benefit of thirsty animals and birds," is for a charitable use.

ID.—CONSTRUCTION OF GIFT—BENEFITS LIMITED TO USEFUL ANIMALS.— Such gift is not invalid because its benefits are not in terms limited to animals or birds useful to man. If it be assumed that a gift which might in part benefit noxious animals would be objectionable, the gift in question should be fairly construed as designed for the advantage of useful animals only.

ID.—FOUNTAIN DESIGNED AS MEMORIAL FOR PRIVATE PERSON.—The fact that the testatrix by her will stated that the bequest was given as a memorial for her husband, does not show that it was intended for a private rather than a public purpose.

ID.—CITY OF SACRAMENTO MAY ACCEPT GIFT AND MAINTAIN FOUNTAIN.— The city of Sacramento, under section 1275 of the Civil Code and the provisions of its charter (Stats. 1893, p. 547), has the power to accept such bequest; and the future maintenance of the fountain would be within the legitimate scope of its municipal functions.

APPEAL from a decree of the Superior Court of Sacramento County distributing the estate of a deceased person. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Downey & Pullen, for Appellants.

J. R. Hughes, R. T. McKisick, and DeLigne & Jones, for Respondents.

SLOSS, J.—The will of Florence A. Coleman contained the following provision:

"I give and bequeath to the city of Sacramento the sum of thirty thousand dollars to be used in erecting a suitable fountain for the benefit of thirsty animals and birds, to be placed in a prominent place, accessible to all. This I give in memory to my beloved husband, W. P. Coleman, deceased."

At the close of administration, the executors petitioned for distribution, and the court made its decree, distributing the sum of thirty thousand dollars (less a necessary abatement) to the city of Sacramento to be used for the purposes declared in the will.

The residuary legatees and devisees appeal from the decree.

The main question presented is whether the gift is one to a charitable use. If it is not, the provision suspends the power of alienation beyond the limits allowed by our law, and is void for that reason. (Civ. Code, sec. 715; *Estate of Hinckley,* 58 Cal. 457; *Estate of Gay,* 138 Cal. 552, [94 Am. St. Rep. 70, 71 Pac. 707] ; *Estate of Sutro,* 155 Cal. 727, [102 Pac. 920].) On the other hand, it is thoroughly settled that the code provisions respecting suspension of the power of alienation have no application to charities and charitable uses. (*Estate of Hinckley,* 58 Cal. 457; *Estate of Sutro,* 155 Cal. 727, [102 Pac. 920].)

The terms ''charity'' and ''charitable use'' have frequently been defined by the courts. ''A charitable use,'' it is said in *Estate of Lennon,* 152 Cal. 327, [125 Am. St. Rep. 58, 14 Ann. Cas. 1024, 92 Pac. 870], ''is a gift for the benefit of persons, either by bringing their hearts and minds under the influence of education or religion, by relieving their bodies of disease, suffering or constraint, by assisting to establish them for life, by erecting or maintaining public buildings, or in other ways lessening the burdens or making better the condition of the general public, or some class of the general public, indefinite as to names and numbers. In short, it is a gift to a general public use.'' (See, also, *Estate of Sutro,* 155 Cal. 727, [102 Pac. 920] ; 2 Perry on Trusts, sec. 697.) It is not necessary, however, that the persons constituting the general public be the direct beneficiaries of the gift. ''Gifts to benefit man through the medium of benefiting animals are good charities.'' (Tyssen on Charitable Bequests, p. 170; 6 Cyc. 924.) Thus, a bequest for founding an institution for studying and endeavoring to cure maladies of any quadrupeds or birds useful to man has been held to be a good charitable bequest. (*University of London* v. *Yarrow,* 1 DeG. & J. 72.) So, too, a bequest to a society to promote prosecution for cruelty to animals (*Re Vallance,* Seton, 5th ed., 1141) ; and gifts to the Royal Society for the Prevention of Cruelty to Animals, the Society for the Protection of Animals liable to vivisection, and to the Home for Lost Dogs (*In re Douglas,* 35 Ch. D. 472). There are other decisions upholding, as good charitable bequests, gifts for the suppression and abolition of vivisection. (*Armstrong* v. *Reeves,* 25 L. R. Ir. 325; *In re Foveaux* ·[1895], 2 Ch. 501.)

If the prevention of cruelty to animals, and the suppression of vivisection are charitable uses, there can be little room for doubt that a bequest for relieving animals from the sufferings of thirst must equally be upheld as a gift to charity. Indeed, this general proposition is not disputed by appellants. They contend, however, that the gift must fall because its benefits are not in terms limited to animals or birds useful to man. It is by no means clear that such limitation is essential to the validity of the gift. In *University of London* v. *Yarrow*, 1 DeG. & J. 72, the animals and birds to be aided were thus described. The case can hardly, however, be viewed as deciding that this limitation was essential to the validity of the gift. The other cases cited seem to indicate the contrary view, for in the gifts to prevent cruelty to animals or vivisection, there is nothing to show that the animals who were to be protected included only domestic animals or others of specific usefulness to man. But, if we assume that a gift which might in part benefit noxious animals would be objectionable, we think the bequest before us is fairly to be read as designed for the advantage of useful animals only. The will must be construed in the light of the established facts and circumstances. The gift is to the city of Sacramento, and it is reasonably to be inferred that the fountain will be erected in the city. A fountain in a thickly inhabited municipality will, in the ordinary course, be resorted to by horses, dogs, or other domestic animals, and by such birds as, because of their useful, or at least harmless, character, are permitted to exist in and about a city. The remote and improbable contingency that a harmful quadruped or bird might obtain access to the fountain and drink therefrom would not, we feel, justify us in holding that the gift is not for a charitable purpose.

There is no force in the contention that the gift is for a private, rather than a public purpose, in that it is designed as a memorial to the husband of testatrix. The gift is made to the city in trust for the public purpose of erecting a fountain. Its character is not affected by the fact that, in another sentence, the testatrix states her motive for making it.

Nor are we impressed with the final objection that the city of Sacramento has no power to accept the bequest. It has long been the settled law of this state that municipal cor-

porations may accept charitable bequests. (*Estate of Robinson,* 63 Cal. 620.) The general power of such corporations to take under a will is declared in section 1275 of the Civil Code. The charter of the city of Sacramento, in force at the time of the bequest and the decree, also gave power to accept bequests and gifts "in fee simple or in trust for charitable or other purposes, and to do all acts necessary to carry out the purposes of such bequests. . . ." (Stats. 1893, p. 547.) If, as is argued, the acceptance of the gift will require the city to incur the expense of future maintenance, we do not doubt that such maintenance is within the legitimate scope of municipal functions.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.