THE CITY OF BANGOR *vs.* RISING VIRTUE LODGE, No. 10, FREE AND ACCEPTED MASONS.

Penobscot. Opinion May 27, 1882.

*Public charity. Masonic lodge. Taxes. R. S., c. 6, § 6.*

The distinctive characteristics of a public charity are, that its funds are derived from gifts and devises, and not from fees, dues and assessments, and

that it is not confined to privileged individuals, but is open to the indefinite public.

A masonic lodge is not a charitable or benevolent institution, within R. S., c. 6, § 6, part second.

Its real and personal estate is subject to taxation, and must bear its just and proportionate share of the expenses required for the support of government.

ON REPORT.

Assumpsit to recover a tax assessed upon the real estate of the defendant corporation for the year 1880. The defendant claims that the property was exempt from taxation, on the ground that it is a benevolent and charitable institution, incorporated by this State, and the sole question submitted to the court is whether the property was exempt from taxation. The defendant was incorporated by c. 37, of the special laws of 1821. The property taxed is two brick stores and lot, owned by four masonic societies, one of which is defendant; the two upper stories they occupy as their place of meeting, the two lower stories by tenants paying rent to them, of which the defendant receives one-fourth. Whole valued by assessors, fifteen thousand dollars, and is mortgaged for four thousand five hundred dollars.

By the ancient masonic usages, a lodge of masons can be created and exist only by a charter from a Grand Lodge. Rising Virtue Lodge was chartered by the grand lodge of Massachusetts, September 16, 1802. A copy of the charter is made a part of the case.

Immediately upon the admission of Maine as one of the United States, the Grand Lodge of Maine was formed, and all the lodges in the State (including the defendant) passed at once under its authority as fully as if they had been originally chartered by the Grand Lodge of Maine. The pamphlet entitled "Constitutions and General Regulations of the Grand Lodge of Free and Accepted Masons of the State of Maine," is made a part of the case, also, the act of incorporation of the Grand Lodge of Maine, approved June 16, 1820. The defendant purchased its interest in the property in part, with two thousand dollars, a legacy from the late Rufus Dwinal, "for charitable purposes," as stated in *Everett* v. *Carr*, 59 Maine, 325. The by-laws of the lodge provide as follows:

"Article IV.—Committees.

"Section 1. At the annual communication there shall be chosen, by written ballot, a committee on charity, of which the master shall, *ex-officio*, be chairman; a committee on finance and committee of investigation, each to consist of three members, and may each be balloted for upon one ticket.

"Section 2. To the committee on charity shall be referred all applications for charity, and it shall be their duty to afford relief in all cases by them deemed proper; and they shall have authority to draw their order, through their chairman, upon the treasurer, for that purpose, for any sum not exceeding ten dollars in any case at any one time, such relief, in all cases, to be confined to members of the order, and the widows and orphans of deceased brother masons. Said committee shall report at the annual communication, specifically, in writing."

Upon so much of this statement as is legal evidence, the law court is to render such judgment as the law requires.

*T. W. Vose*, city solicitor, for the plaintiff, cited: R. S., c. 6, § 6; 119 Mass. 22; 3 Gray, 50; 11 Allen, 464; 72 Maine, 159; *Delaware County Institute of Science* v. *Delaware Co.* 8 Weekly Notes of Cases, 449; 4 Conn. 172.

*Drummond and Drummond*, for the defendant.

R. S., c. 6, § 6, provides that "the real and personal property of all benevolent, charitable and scientific institutions incorporated by this State," shall be exempted from taxation. The defendant claims that it is a benevolent or charitable institution.

I. It is incorporated as a society instituted for purposes of charity and benevolence, and is authorized to hold property only for "charitable and benevolent uses." As an incorporation, it can hold property only as authorized in its charter; that instrument authorizes it to hold property only for "charitable and benevolent uses." The same act expressly recognizes it as a charitable and benevolent society, for it is given the privileges "usually granted to other societies instituted for purposes of charity and beneficence." Accordingly, in *Everett* v. *Carr*, 59 Maine, 325, it was held that a bequest to this very lodge "for

charitable purposes" was valid, as the body was expressly author-
ized to take and hold property for such purposes.

II. The case shows that the defendant is a charitable and
benevolent institution by its own organic laws. It is agreed, that
according to ancient masonic usages, no lodge can be created or
exist, without a charter from a grand lodge, the supreme
governing body. The charter of the lodge is in the case. By
it this lodge is authorized "to receive and collect funds for the
relief of poor and distressed brethren, their widows and child-
ren; and in general, to transact all matters relating to masonry
which may to them appear to be for the good of the craft,
according to the ancient usages and customs of masons." By
its civil charter and its masonic charter also, this body, therefore,
is a charitable and benevolent institution, holding its property for
charitable purposes.

III. The charter laws of the Grand Lodge, which is its supreme
governing power, show this still more clearly. Act of June 16,
1820; Laws of 1820, p. 8; Constitution of Grand Lodge, § §
55, 56, 57, 77, 112. The right to relief in masonry, however,
is not a legal right, enforceable by law, but a moral right, appeal-
ing to the conscience of the members.

To relieve the distressed is solemnly enjoined; but the manner
of so doing is left to the party giving the relief. It is a matter
of public history, that when the devastation of fire visited the
cities of Portland, Chicago and St. John, and the forests of
Wisconsin and Michigan, and the devastation of pestilence visited
the South, the masonic lodges all over the country poured in relief
with prompt and open hands.

The lodge holds its property in trust for charitable purposes,
and even upon the winding up, or dissolution of a lodge, its
members cannot divert the fund from its purposes. Constitution,
Grand Lodge, § § 70, 71; *Duke* v. *Fuller*, 9 N. H. 536.

IV. The by-laws of the lodge in the case show the character
of the society. A committee on charity is chosen annually,
whose power and duty are to relieve the distress of needy breth-
ren, their widows and orphans. The fact that the charity of the
institution is not universal, but preference, at least, is given to

brethren, their widows and orphans, does not affect the case.
The society is none the less a charitable institution. *Indianapolis*
v. *The Grand Master*, 25 Ind. 518 ; *Maine Baptist Missionary
Convention* v. *The City of Portland*, 65 Maine, 92 ; *Jackson* v.
*Phillips*, 14 Allen, 539 ; *Old South Society* v. *Crocker*, 119
Mass. 11 ; *King* v. *Parker*, 9 Cush. 71 ; *Attorney General* v.
*Old South Society*, 13 Allen, 474 ; *Fellows* v. *Miner*, 119 Mass.
541 ; *Sohier* v. *Burr*, 127 Mass. 221 ; *Boxford* v. *Harriman*,
125 Mass. 327 ; *McDonald* v. *Massachusetts General Hospital*,
120 Mass. 432.

We do not perceive how the court can hold that this corpora-
tion's property is not exempt from taxation, unless it expressly
overrules, *Everett* v. *Carr*, 59 Maine, 325 ; *Duke* v. *Fuller*,
9 N. H. 536; *King* v. *Parker*, 9 Cush. 71 ; *Indianapolis* v.
*Grand Master*, 25 Indiana, 518 ; *State* v. *Addison*, 2 S. Car.
(N. S.) 499, and a host of other cases in which the same principle
is involved.

APPLETON, C. J.    The Rising Virtue Lodge, with other lodges,
owning a block of stores assessed as of the value of fifteen
thousand dollars, claim that this property, a small portion of
which, in value, is used for masonic purposes, should be exempted
from bearing its proportionate share of the burdens, which are
imposed, for the support of government, on the general property
of the community.

The just and honest rule in assessments for governmental pur-
poses is equality of taxation.    Whatever sacrifices it requires
from the people should be made to bear as nearly as possible with
the same pressure upon all.    In this way only will there be the
least sacrifice by all.    If one bears less than his share of the
public burdens, some other must bear more.    If one block
of stores remains untaxed, the remaining stores and other taxable
property must be unduly and disproportionately taxed.    The
more numerous the exemptions, the more unequal and burden-
some the taxation.

The defendant corporation denies that its property should be
assessed to defray its ratable share of the expenses of the
government, which protects it, in common with the other prop-

erty of the people and corporations of the State. The ground of exemption rests on R. S., c. 6, § 6, part 2, by which "the real and personal property of all literary institutions, and the real and personal property of all benevolent, charitable and scientific institutions incorporated by this State," are exempted from taxation.

Assuming that the legislature have the power to relieve favored corporations or individuals from paying their just taxes, (and it is as proper in the one case as in the other,) still taxation is the general rule ; exemption from taxation the exception. Statutes violating the general rule are to be construed strictly. They must be construed with the utmost strictness. The statute creating the exemption must be clear, precise and definite, so as to satisfy the court beyond all doubt that the exemption claimed was within the intention of the legislature, as every exemption is repugnant to equal and impartial taxation. "All exemptions are to be construed strictly. Such special privileges are in conflict with the universal obligation of all to contribute a just proportion toward the public burdens." *Co. Com.* v. *Sisters of Charity*, 48 Maryland, 34. "The power to tax," observes DAVIS, J., in *Bailey* v. *Magwire*, 22 Wallace, 226, "rests upon necessity, and is inherent in every sovereignty, and there can be no presumption in favor of its relinquishment."

Exemption is a special favor conferred. The party claiming it must bring his case unmistakably within the spirit and intent of the act creating the exemption. Charity and charitable uses are expressions recognized and well understood in the law. The object of the legislature was to favor societies existing *exclusively* for charitable purposes, or as was said elsewhere by an eminent court, for purposes *purely* charitable, not a society existing for other and distinct purposes, and with other and different objects to be attained. It was the object to protect public charitable institutions.

The statute upon which the defendants rely, uses the word benevolent, but there is no question that this word, when used in connection with charitable, is to be regarded as synonymous with

it and as defining and limiting the nature of the charity intended. *Saltonstall* v *Sanders*, 11 Allen, 470.

What, then, is a charity? What is a charitable institution? "A good charitable use is *public*," remarks GRAY, J., in *Saltonstall* v. *Sanders*, 11 Allen, 456, "not in the sense that it must be executed openly and in public; but in the sense of being so general and indefinite in its objects as to be deemed of common and public benefit. Each individual immediately benefitted may be private; and the charity may be distributed in private and by a private hand. It is public in its general scope and purpose, and becomes definite and private only after the individual objects have been selected." In *Attorney General* v. *Proprietors of Meeting House*, 3 Gray, 50, "A public charity," observes SHAW, C. J., "in legal contemplation, is derived from *gift or bounty*." *Attorney General* v. *Hewer*, 2 Vern. 387. In the case of the *Attorney General* v. *Heelis*, 2 Sim. and Stu. 77, it is said by the Vice-Chancellor, that it is the source whence the funds are derived, and not the purpose to which they are dedicated, which constitutes the use, charitable; if derived from the gift of the crown, or the legislature, or a private gift for improving a town, they are charitable, within the equity of the stat. of 43 Eliz. c. 4; but when a fund is derived from rates and assessments, being in no respect derived from bounty or charity, it is not charitable. So a subscription by a benefit society, for mutual relief, is a private and not a public charity, and does not require the intervention of the attorney general, *Anon.* 3 Atk. 277. The essential features of a public charity, are, that it is not confined to *privileged individuals*, but is open to the indefinite public. It is this indefinite, unrestricted quality, that gives it its public character. *Donohugh's Appeal*, 86 Penn. 306.

Masonry being a secret institution, and its main purposes being carefully guarded from public scrutiny and knowledge in the secrecy of its lodges, we can only ascertain the objects of its existence from the information afforded us by its constitution and its general regulations, so far as they are made part of the case. The intimate purposes of the institution are not disclosed. They are secret. They are kept sacred. It is only from what is known that we can infer what are its leading objects.

The section relied on as exempting the institution from taxation, refers to those which are *purely* charitable. That masonic lodges are charitable to their own members is not to be questioned, but that is not the question. The inquiry is, whether it is a public charity or a private charity for the exclusive aid of its members.

The constitution, it seems by the preamble thereto, was ordained and established "in order to form perfect fraternal union, establish order, insure tranquility, provide for and promote the general welfare of the craft, and secure to the fraternity, the blessings of masonic privileges." From the "blessings of masonic privileges," all not members, and all of the female sex not married to masons or begotten by them in lawful wedlock, are excluded, while no woman can be a member, and no man, except by a unanimous vote. It will, too, be perceived that charity is not even mentioned as one of the purposes for which the constitution was ordained and established, but "the welfare of the craft" and "the blessings of masonic privileges" are specially designated.

It provides for the establishment and preservation of "a uniform mode of working and lectures, in accordance with the ancient landmarks and customs of masonry," and a Grand Lecturer, "whose duty it shall be to exemplify the work" and "impart instruction to any lodge requiring their services."

Its funds are derived from fees for initiation, assessments, fees for dispensation for holding new lodges, to be paid the Grand Treasurer, and generally from "fees, dues and assessments."

Of the nine committees for which provision is made in the management of the institution, there is one for charity, whose duty it is to appropriate the interest of the charity, "in whole or in part, for the relief of such poor and distressed brethren, their widows and orphans, as the grand lodge or the trustees of the charity fund may consider worthy of assistance, and if the whole be not so distributed, the residue, with all the other receipts of the treasurer, after deducting therefrom such sums as may be necessary for the ordinary expenses of the Grand Lodge," is to be added to this fund. This limitation of charity in the constitution is found in similar terms in the charter of the defendant lodge.

The jewels and the regalia, the elaborate schedule of official dignitaries with titles implying important functions and grave duties, inconsistent with and unnecessary for the distribution of charities, its splendid processions, its gorgeous rooms, its palatial temples, its "duly" guarded doors, its mysterious rites, its secret signs of recognition, all its rules, regulations and proceedings, so far as made known to the public, negative the idea that charity is the primary and exclusive object of the institution, and conclusively prove that "the welfare of the craft," and "the blessings of masonic privileges," are the objects of its existence. It is a society for mutual benefit and protection, and the ends to be attained are private and personal, not public. The very word "privileges," implies rights and immunities superior to those enjoyed by others.

It is apparent that the defendant corporation cannot be regarded as a purely public charitable institution, because it wants the essential elements of a public charity. It has other objects than charity. Whatever its ultimate purposes, they are other than charitable. Its funds are derived not from devises and gifts, as in case of a public charity, but from fees and the assessment of its members. The funds so obtained are to be distributed among the poor and needy members, from whom they were collected, and among their wives and children. It is an association for the mutual benefit of its members, and not a charitable institution within the meaning of the statute. *Bolton* v. *Bolton, ante,* p. 299.

In *Babb* v. *Reed,* 5 Rawle, 157, it was held that a lodge of Odd Fellows, being an association of mutual benevolence among its members, was not a charitable institution. But the Odd Fellows, so far as is known, are a secret institution with signs of recognition and carefully guarded secrets, raising their funds and distributing the same in a similar manner as the Masons. "The association," observes SARGENT, J., in delivering the opinion of the court, "from whose property is the money in court, was formed and conducted without incorporation. Its objects are stated to be the employment of its funds in purposes of mutual benevolence among its members and their families; but these

cannot be deemed charitable uses under the common law of Pennsylvania, or the statute 43 Eliz. The twenty-one cases enumerated in the statute, and others constructively within it, are of a *public* nature, tending to the benefit or relief in some shape or other, of the community at large, and not restricted to the mutual aid of a few." In *Thomson's Ex'rs* v. *Norris*, 20 N. J. Eq. 524, the case of *Babb* v. *Reed* was cited with approbation.

In *Delaware County Institute* v. *Delaware County*, 8 Weekly Notes of Cases, (Penn.) 449, it was held that an institute of science, whose object was the promotion of general and scientific knowledge among the community at large, but whose benefits were restricted to its members, except at the pleasure of its managers, was not a *purely* public charity, and was not exempt from taxation as such. "The plaintiff in error," observes the court, "so far from being a *purely* public charity, is not a public charity at all. It is a private corporation for the benefit of its members, as much as any other beneficial and literary society." It will be observed that other than members were allowed, or might be allowed, to participate in all the benefits of the association, not so with masonic lodges, whose "masonic privileges" and benevolence are limited and restricted to its members and families.

A charitable institution to be exempted from taxation must be a *purely* charitable one. *Humphries* v. *Little Sisters of the Poor*, 29 Ohio, 206. The gift or bequest must be for *strictly* charitable purposes, else the trust will not be enforced. *Thompson's Ex'rs* v. *Norris*. The funds of the defendant corporation may be and are, as the case shows, applied to other than charitable uses, "as for the good of the craft," in building a hall for the unknown purposes of its existence. To authorize exemption from taxation its purposes must be "strictly charitable," "purely charitable," not a commingling of other and more important purposes with charity as a mere secondary consideration.

But we are referred to certain decisions as opposed to the conclusions to which we have arrived. It may be proper to remark that the constitution and regulations of the Grand Lodge

were not before nor considered by the court, in the cases relied upon in defence.

In *King* v. *Parker*, 9 Cush. 71, it was held that a conveyance to certain persons and the survivors of them as joint tenants, but without word of limitation to their heirs or to the hêirs of the survivor, in trust to and for the use of an unincorporated lodge of Freemasons, to the only proper use, benefit and behoof of the lodge forever—that the conveyance was in trust and that the estate did not descend to the heirs of the grantor.   It suffices to remark that since that decision the question of public charities has been before the same court, and this decision has been not merely doubted, but, substantially, so far as relates to the question under discussion, overruled.   In *Old South Society* v. *Parker*, 119 Mass. 24, WELLS, J., says property held in trust for a monthly meeting of Friends *seems* to have been regarded as a public charity in *Earle* v. *Wood*, 8 Cush. 430, and in *Dexter* v. *Gardner*, 7 Allen, 243 ; and for a lodge of Freemasons in *King* v. *Parker*, 9 Cush. 71, but neither of these cases was a proceeding which concerned the administration of charity as such. They were suits relating to trusts, in which the rights of private parties alone were represented.   There was no *public* charity declared in either case, and no adjudication which necessarily involved or was based upon the existence of a charitable trust. A fund to be dispensed exclusively by way of mutual aid or benefit, among the members of an association, *is a private* and not a *public charity*, 3 Gray, 50 ; 11 Allen, 64.   It may *well be questioned*, therefore, whether all the conditions requisite for a technical public charity, were present in the case of *King* v. *Parker*, cited above.

The case of *Duke* v. *Fuller*, 9 N. H. 536, was that of an unincorporated lodge of Masons, one of whose by-laws was that, "the furniture and funds of the lodge shall be considered as the joint and equal property of all the members, who shall, by a majority of votes, have management thereof for the good of the craft or for the relief of indigent and distressed worthy masons, their widows and orphans."   The lodge was dissolved and the funds divided among the six attending members and the defendant,

who had been its treasurer, and the plaintiff brought his suit for his share.    The court held the division void and gave judgment for the defendant.    In their opinion they cite stat. 43 Eliz. relating to "gifts and devises" for charitable uses, as if the funds derived from assessments were derived by "gifts or devises," which they assuredly are not, any more than taxes collected for and appropriated to the support of paupers, are to be deemed within that statute, though that is a more general and extensive charity.    Assuming this to be a *public* charity, the court intimate that in cases of gross mismanagement or dissolution, it might, sitting as court of equity, take the funds and commit their administration to other hands.    But the right to thus interfere can rest only on the ground, that this is a *purely* public charity, which all the authorities show it is not.

In *The State* v. *Addison*, 2 S. Car. (N. S.) 499, the decision rests upon the long continued construction by the city council of Charleston, of an ordinance passed in 1793, exempting "all and every   .   .   charitable society from payment of any city taxes now due or to become due."    The property of certain real estate belonging to the lodge remained untaxed until the year 1868, when, for the first time, it was taxed.    "Having already intimated," observes MOSES, C. J., "that we do not consider it as essential for any society claiming exemption under the ordinance of 1793, to show that the charities which it administers are *purely* for *public* purposes, we think the relators are to be held within it, *because* the city council, from the period when the societies first owned real estate in Charleston, to 1868, have given a construction to it which it was too late to disregard or change while it was in force.    It is true, as it was not in the nature of a contract, they could have repealed it at their pleasure ; but while operative, their action in regard to it for so long a time must be received as the interpretation of their own enactment."    It will be perceived that it is not alleged that the lodges in question were within 43 Eliz.    The decision rests on the absence of previous taxation, and on the construction of the language of the ordinance, made by the city council.

In *Mayor of Savannah* v. *Solomon's Lodge*, 53 Geo. 93, it was held that a Masonic institution was a charitable institution

and exempt from taxation, but the decision was based solely by WARNER, C. J., upon the statutes of the state. "It was," he remarks, "so recognized and styled by the general assembly of this state, as far back as 1796. See *Marble and Crawford's Digest*, 147." Upon this assumption, and without discussion, the opinion rests. Whether or not it was purely a public charity was neither considered nor discussed.

In *Everett* v. *Carr*, 59 Maine, 326, all that was decided, was, that "incorporated masonic lodges might receive in trust, property devised for charitable purposes." They could hold property as trustees, as towns, or individuals can, but that does not make the towns, lodges or individuals, public charitable institutions within the statute. They are corporations established for other purposes, and holding specified property for certain purposes. They hold as corporations their own property in their own right, for such purposes as the law permits; and trust property in trust, as other trustees. In the will of Dwinel there were legacies to Everett and others, "in trust, to be used solely and purely for charitable purposes." Neither devise altered the relations of the devisees, so as to make either the lodges or the individual trustees, thereby "charitable institutions," and therefore to be exempted from taxation. The only question then was, whether the lodge could take as trustee. That it does charitable acts is not to be questioned, but if charity was not the primary and exclusive object of its existence, and it was not a purely benevolent, charitable institution, the purpose and objects of its existence remaining unchanged, the receiving a devise as trustee would not make it a public, charitable institution — under the statute, when, without and before such devise it was not, any more than a bequest to a town for literary purposes would make such town a literary institution. The town can hold a devise for literary purposes, as trustee, precisely as a lodge can for benevolent purposes, without the one being a literary or the other a benevolent institution, within the purview of the statute. *Piper* v. *Moulton*, 72 Maine, 155.

In *Indianapolis* v. *Grand Master*, 25 Ind. 518, it was held that a lodge was a charitable institution — but its rules and regu-

lations were not before the court, nor considered by it. The decision rather assumed it as true that it was a charitable institution, and assuming it to be so, the court decided that it was.

After a careful consideration of the constitution and the general rules and regulations of the Grand Lodge of the state of Maine, and after an examination of the authorities bearing on the question, our conclusion is that a Masonic Lodge is not a charitable or benevolent institution, within R. S., c. 6, § 6, par. 2 and that its real and personal estate must bear its equal and just proportion of the burdens of sustaining government with the other property of the community.

*Judgment for the plaintiff.*

