CHERRINGTON, Estate of, In re.

Probate Court, Franklin County.

No. 108,929.   Decided June 25, 1945.

290

Atwood & Welch, Columbus, for exceptor.
Arnold, Wright, Purpus & Harlor, Columbus, for trustee.
Johnson & Peterson, Columbus, for executor.

LEACH, J., of the Franklin County Common Pleas Court, by assignment, acting Probate Judge.

ON EXCEPTIONS OF W. R. WELCH TO DETERMINATION, HERETOFORE MADE, OF THE INHERITANCE TAX UPON THE SUCCESSIONS TO SAID ESTATE.

## OPINION

By LEACH, J.

The Executor has filed a motion to dismiss the exceptions of W. R. Welch on the ground that the said W. R. Welch is not an interested party, under the Statute and has no legal right to file such exceptions.

The Statute, §5346 GC, provides that "* * any person dis-

satisfied with the appraisement and determination of taxes may file exceptions thereto in writing with the Probate Court * *."

By stipulation, it appears that the said "W. R. Welch, exceptor herein, is not now and was not at the time of the filing of the exceptions herein the owner of any real estate in the State of Ohio, that he had not in current or recent years filed any personal tax return with the Auditor of Franklin County, Ohio, although he is a resident of such county, or paid any personal property tax (other than the Ohio Sales Tax has been imposed upon sales of certain personal property to said exceptor in accordance with its general application and effect), and that said exceptor is neither a creditor, devisee, legatee or heir at law of decedent's estate, and that he has no interest herein whatever, other than any member of the general public might have."

It is stated in the brief on behalf of the motion that "We believe that the phrase 'any person dissatisfied' as used in §5346 GC, was intended to mean, and does mean, any person who has an interest in the estate, i. e. an heir, legatee, devisee, creditor, etc." No authorities are cited in support of this contention, and it is not in accord with the simple language of the statute.

We may here quote, as apropos, the language of Shauck, J., from the opinion in **Little v Seminary, 72 Oh St, at page 423:**

"The observation that the reason of the law is its life, so frequently helpful in the determination of questions arising at common law, must have a restricted application to the interpretation of statutes. In the discharge of the duty of interpretation it is not required or permitted to courts to go beyond the plain meaning of the language which the legislature has used to express its intention."

It has long been the rule that,

"The intent of the law makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the lawmaking body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

2nd Syl., **Slingluff v Weaver, 66 Oh St 621.**

The language: "any person dissatisfied" is clear, distinct, and unambiguous. To apply the statute as argued for in the brief on behalf of the motion would require absent words—which are not implied—to be read into the statute. This would be judicial legislation which is not permitted.

The motion to dismiss the exceptions will be overruled.

Exceptions.

**On the questions raised by the exceptions.**

The reasons for the exceptions are assigned therein, as follows:

"1. The Court erred in exempting from inheritance tax property of the net market value of $891,043.09 which passed by the last will and testament of the deceased to the Huntington National Bank, as Trustee, for the establishment of a home to be called "The Julia Hurst Cherrington Memorial Home", whereas, the Court should have assessed a tax on all but $20,000 of this succession, since exemptions in excess of $20,000 are not permitted by the limiting provisions of **Article XII, Section 7 of the Constitution of the State of Ohio.**

"2. And for all other errors apparent upon the record which may be prejudicial to Department of Taxation of the State of Ohio and to the State of Ohio."

**1. Article XII, Sec. 7 of the Ohio Constitution** (adopted Sept. 3, 1912) referred to in the first assignment of error is as follows:

"Laws may be passed providing for the taxation of the right to receive, or succeed to, estates, and such taxation may be uniform or it may be so graduated as to tax at a higher rate the right to receive, or to succeed to, estates of larger value than to the estates of smaller value. Such tax may also be levied at different rates upon collateral and direct inheritances, and a portion of each estate not exceeding twenty thousand dollars may be exempt from such taxation."

**Sec. 5331 et seq., GC,** provides generally for the levying of inheritance taxes.

**Sec. 5334 GC,** provides that successions to certain grantees or legatees or for certain uses therein named shall not be subject to the preceding sections levying the tax; in other words, exempting completely such property so passing from all inheritance taxation. The pertinent part of said §5334 **GC,** here involved is as follows:

"The succession to any property passing * * to or for the use of an institution for purposes only of public charity, carried on in whole or in substantial part within this state, or to an institution or organization not for profit and for the exclusive purpose of printing and distributing the Holy Bible, shall not be subject to the provisions of the preceding sections of this subdivision of this chapter. * *"

Pursuant to this statutory exemption the residuary estate of the decedent Charles S. Cherrington, having an appraised value of $891,048.09, by his will devised and bequeathed to The Huntington National Bank of Columbus, Ohio, in trust for the purposes of establishing, building and supporting a home for children, who are orphaned, or without the care and support of parents, and to be known as The Julia Hurst Cherrington Memorial Home, was heretofore, on application of the executor for determination of the inheritance tax on said estate, determined by the Court to be wholly exempt from the succession or inheritance tax; and it is to such determination, that pursuant to §5646 GC, the execeptions, now before the Court were filed.

On behalf of the exceptor it is argued that any exemption in excess of $20,000 is violative of the provisions of Art. XII, Section 7 of the Constitution; in other words, that §5334 GC, in so far as it authorizes exemptions in excess of $20,000, is unconstitutional; or if considered constitutional, that said §5334 GC, should be read, construed and applied as though it contained specific language (which it does not) limiting such exemptions to $20,000.

On December 29, 1922, the Ohio Supreme Court decided the case of Harvard College v State, 106 Oh St, 303. The exceptor denies the applicability of said decision to the present inquiry relative to the constitutional question raised, while, on the other hand, the executor and trustee both affirm that the case is squarely in point, and decisive of the constitutional question.

The section of the General Code under attack in that case for claimed invalidity was old §5332 GC, (94 O L 101, Sec. 1) which provided that:

"The provisions of the next preceding section (which provided for the levying of collaterial inheritance taxes generally) shall not apply to property transmitted to * * public institutions of learning or to or for the use of an institution in this state for purpose only of public charity or other ex-

clusively public purposes. The property, or interests in property so transmitted or embraced in such devise, bequest, transfer or conveyance shall be exempt from all inheritance and other taxes while used exclusively for any such purposes."

Said Act was passed April 6, 1900, and was in effect, therefore, before the adoption of the constitutional amendment; it remained in effect at the time the estate involved in the Harvard College case was administered, which was subsequent to February, 1916, which was the date of the death of the testator who left a legacy to Harvard College, and was of course subsequent to the effective date of the constitutional amendment, known as **Art. XII, Sec. 7.**

It is argued that the Harvard College case is inapplicable because the enactment there under consideration was an act passed before the adoption of the constitutional amendment of 1912; that it was not a law enacted under the permissive constitutional amendment, and that, therefore, the case was decided upon the law in effect at the time the Constitution was amended; and that a different conclusion would necessarily have to be reached in the construction of any inheritance tax law or amendment enacted subsequently to the effective date of the constitutional amendment, and that the present law, §5334 **GC,** was so subsequently enacted; and from this it is argued that the $20,000 limitation on exemptions mentioned in the Constitution, must be read into the present act.

In the Harvard College case, it was held that,

"Neither in that Section (**Section 7, Article XII**) nor elsewhere in the Constitution is there a legislative limitation prohibiting the exemption of 'public institutions of learning' from such succession tax. **Sec. 5332 GC** (94 O L 101, Sec. 1) is a valid exercise of legislative power."

In that case the value of the residuary legacy to Harvard College was in excess of $20,000, to wit, $73,478.97. The Probate Court found that this sum was subject to a collateral inheritance tax of $3673.95. On appeal to the Common Pleas Court, that Court found the legacy not subject to the tax. On error to the Court of Appeals, that Court reversed the Common Pleas Court and affirmed the judgment of the Probate Court, holding that the bequest was subject to the tax. The Supreme Court, two judges dissenting, reversed the judgment of the Court of Appeals, and affirmed the judgment of the Common Pleas Court. Thus we see that the question involved, gave rise to much difference of opinion among the

judges who had the matter before them: of all the judges who considered the question, six judges took one position, and six judges, the opposite position. However that may be, this Court is, of course, bound by the decision of a majority of the Supreme Court, if the case be here applicable.

Prior to the decision of the Harvard College case, Judge Shauck, in the opinion, in the case of **State, ex rel., v Lynch, 88 Oh St, pp. 92, 93** had stated that,

"* * All laws in force when the latter (constitutional amendments) took effect, and which were not inconsistent with it (them) would have remained in force without an express provision to that effect; and all inconsistent laws fell simply because they were inconsistent; in other words, all repugnant laws were repealed by implication.

"The conclusion also results from the express provision of the general schedule to the present (1912) amendments: 'All laws then in force (when the amendments took effect) not inconsistent therewith shall continue in force until amended or repealed.' "

This principle was recognized as correct in both the majority and dissenting opinions in the Harvard College. case and both opinions were written in full recognition and acceptance thereof. Jones, J., in the majority opinion, at page 308, said:

"Under Schedule 20, adopted as part of the Constitution in 1912 this law (old §5332 **GC**, 94 O L 101, Sec. 1) continued in force until amended or repealed, if not inconsistent with the amendments to the Constitution then adopted."

And Wanamaker, J., in his dissenting opinion, pp. 312, 313, said:

"It will be observed that the statute in question (§5332 **GC**) under which the exemption is claimed, is found in 94 Ohio Laws, 101, enacted before the adoption of the constitutional amendment of 1912. By virtue of the express schedule of the Constitution, as well as by the implied rule of law governing all statutes in effect at the time of the adoption of any new constitutional amendment, in so far as such statue is in conflict with the later constitutional amendment the statute must fall. This elementary doctrine has been too frequently announced by this Court to require any citation and the majority opinion admits the soundness of this contention * *."

Nevertheless, the majority opinion, while specifically recognizing said principle, said, (pp. 308, 309):

"The last clause of the section, (old §5332 GC) however, discloses a legislative intention that the transfer named therein should 'be exempt from all inheritance taxes' while used exclusively for the purposes named. Whether the General Assembly had theretofore a general grant of power to tax, under Sec. 1, Art. II of the Constitution, is unimportant, for Sec. 7, Article XII specifically authorizes the taxation of inheritances, or what we have construed to be estates succeeded to by the beneficiaries."

If that question was unimportant, then it must be apparent that the ruling in the case would have been the same even if the exemption section there under consideration had been passed after the adoption of Sec. 7, Art. XII, instead of before that time. The Supreme Court, in its opinion, therefore, has ruled out, by its specific language, the distinction sought to be drawn between the pending case and the Harvard College case on the constitutional question involved. The question there was the same as the question here in the pending case.

The minority were of the opinion that,

"The most that could possibly be claimed in favor of the Harvard College bequest, upon any possible statute is that of the $73,000 they were to receive under the will, $20,000 thereof was exempt, else this Court writes $73,000 into the Constitution of Ohio instead of $20,000. There is no alternative if ordinary language has any meaning or conveys understanding. And yet this Court exempts the entire $73,000."

The theory of the majority is stated in the following language, pp. 309, 310:

"Under the general provisions of the Constitution the Legislature had full power to make a classification, if uniform; provided, of course, the basis of classification was not an arbitrary one. (City of Xenia v Schmitt, 101 Oh St 437.) Certainly the classification made in Section 5332, General Code, separating public charitable and educational institutions, was not unreasonable or arbitrary in view of the benefits accruing to the public as distinguished from those of a private nature. The State had always favored that feature as a basis for classification.

"Could the State, in the exercise of this power, relieve this institution entirely from the tax?

"Section 7 permitted a wide discretion in the Legislature, by the use of the language 'laws may be passed' providing for taxation and exemptions therein named. (Note: here, again, we see that the situation was assumed to be the same as though the act had been enacted subsequently to the constitutional amendment.) The right to exercise both therefore subsists, and we must look elsewhere in this section for a legislative limitation of that power. An examination discloses that instead of a limitation the grant is general. It provides, that taxation may be uniform or graduated according to the value of the estate succeeded to. Different rates may be imposed upon direct and collateral inheritances. Section 7 gave the legislature discretionary power to exempt a 'portion of each estate not exceeding 20,000 dollars'. There was no limitation within the maximum embraced. The Legislature was empowered to exempt a full sum, a portion thereof, or in its discretion no amount whatever. Having thus provided the specific maximum limitation, we may not add another to the effect that the Legislature cannot wholly exempt a class from the succession tax if the class exempted is selected upon a reasonable basis."

In this Court's opinion, the constitutional question raised by the exceptor herein is not an open one. It has been decided by the Supreme Court in the Harvard College case, and in our opinion, that case has not been and cannot be distinguished from the situation presented in the instant case in so far as the constitutional question involved is concerned. Under the rule of stare decisis this Court is bound by it. If the ruling made by the Supreme Court is to be modified or overruled, then such ruling must be made by that Court; it is not open to this Court to do so.

The exceptions, in so far as they relate to the first assignment of error, are overruled.

2. The second assignment of error in said exceptions is as follows:

"And for all other errors apparent upon the record which may be prejudicial to the Department of Taxation of the State of Ohio, and to the State of Ohio."

The statute, §5346 GC, requires the exceptor to state "the grounds upon which such exceptions are taken." It may

be doubtful whether the second assignment of error is sufficiently definite to comply with the statute, since the language used is general and does not point out any specific "grounds upon which such exceptions are taken". Nevertheless, while such grounds are not stated in the assignment of error, they are contained in the brief for the exceptor and will be here considered as though they were specifically set forth in said assignment of error. The arguments in the brief under this assignment are that for several reasons the bequest for an orphans' home does not meet the requirements of §5334 GC, and that, therefore, it is not free from the tax.

It is argued:

1. That the Huntington National Bank of Columbus, Ohio, named as Trustee is not such an institution as in administering charities would be exempt.

This objection is, we think, answered in part in the opinion, in **Tax Commission v Paxon, 118 Oh St, 39:**

"The organization of the trust by turning over the estate from the executors to the trustees under the will constitutes **an institution** in being for the purposes of the trust. This is the holding of this Court in a number of cases dealing with charitable trusts, which have been recently reconsidered and cited with approval, it being held in the case of **Jones, Treasurer, v Conn, et al., Trustees, 116 Oh St, 1,** that the organization of a trust to execute a charitable purpose constitutes a charitable institution."

These cases hold that such a trustee is a charitable institution; whether, for the purposes of the statute in administering such trust it constitutes a charitable institution **only,** depends upon the uses to be made of the corpus of the trust, and these will be alluded to in the discussion to follow in connection with other objections raised in the brief.

2. That the Trustee was granted discretion in the location of the Home and there is no direction as to its location.

The only statutory limitation here relevant is that the charity "shall be carried on in whole or in substantial part **within this state.**" The will directs "that such home be located and established in a rural 'section." It does not specifically say that **it shall, or shall not,** be established in the State of Ohio. The will does provide that "If for any reason, either from shrinkage of assets of my estate or from lack of proper subjects or beneficiaries available for the service of such Home as is outlined herein, it be found impractical to establish and

operate such a Home efficiently, then I desire and direct that the Court of Equity which controls and directs the operation of charitable trusts, direct said Trustee to pay over the income of said trust estate to an appropriate charitable organization already organized and in operation; which is rendering such service as I have outlined herein, and which will receive and use the same in such service, under the names and designations I have herein provided for such service, so that said trust funds shall not be tied up a long time or indefinitely in inactivity, and subject to expenses and charges without accomplishing the objects set forth herein. I suggest the Methodist Children's Home of Columbus, Ohio, as a suitable and appropriate organization for consideration of the Court and said Trustee in making such selection and designation for such purpose."

In mentioning the Methodist Children's Home of Columbus, Ohio, the testator does so clearly as an alternative method of carrying out the charitable purposes of his will— and the Methodist Children's Home of Columbus is mentioned as an institution already organized, which, to use the language of the will, "is rendering **such service as I have outlined herein.**" **Such service** now being rendered by the Methodist Children's Home of Columbus, is being carried out in whole or substantial part within the State of Ohio. Therefore, impliedly, if not specifically, the testator contemplated that the charity he was establishing was to be carried out in Ohio. He was a resident of Columbus, Ohio; his executor, and trustee are both Columbus institutions; the name he designated for the Home to be established would be meaningless as a memorial if established elsewhere than in Ohio. Moreover, as an incident, he provides for the distribution of flowers to the sick poor of Columbus, Ohio, and Portsmouth, Ohio, and other places outside of Ohio, if practicable and possible. It is not required that the entire charity be carried on in Ohio, but only in substantial part.

It was held in **Tax Commission v American Humane Education Society, 42 Oh Ap 4,** that a

"Bequest to charitable institution making one forty-eighth of expenditures in State, held exempt from taxation; such expenditures constituting 'substantial' part if its activities. (Sec. 5334 GC.)"

Parol testimony was admitted to establish the proportion of the total expenditures of the beneficiary which were made in Ohio.

While we think that by clear implication the will requires or at least contemplates that the Home should be built and established in Ohio, we think that in determining the question of whether the statutory requirement that the charity be carried out in whole or substantial part in Ohio would be a question of fact, should we assume that the trustees could, in their discretion, elect to build the Home outside of Ohio. We do not indulge in such assumption, but should we do so, we are of opinion that it would be competent to show that as a matter of fact the Trustee intended to establish the Home in Ohio. The 10th paragraph of the agreed statement of facts is to the effect that on February 28, 1945, the Huntington National Bank of Columbus, as Trustee, by its trust committee adopted a resolution, which, after reciting the provisions of the will that said home be located in a rural section, and the further provision of the will that the activities and operations of said home shall be under the guidance and direction of an Advisory Board of five persons to be appointed by the Trustee, then proceeds:

"And whereas, it is self-evident that the Trustee properly to manage the Home will need to exercise constant supervision thereof;

"Now, Therefore, Be it Resolved, that the Julia Hurst Cherrington Memorial Home be established and erected in or near Franklin County, Ohio, and in no event, be more than fifty miles from the City of Columbus."

The exceptor objects to said paragraph of the stipulation as being immaterial, irrelevant and self-serving, and in support of the contention that said stipulation is incompetent the case of **Cleveland Trust Co. v Tax Commission, 33 Oh Ap, 323,** is cited. In the opinion in that case at page 328, Vickery, J., used the following language:

"The question whether this fund is subject to an inheritance tax must be disposed of as of the time of the devolution of the estate—that is, at the death of the testator —and in accorance with the use of the words in the instrument which creates the trust."

But this falls short of a holding that there may not be cases where resort to parol evidence is permissible. Of course, the use must be in accord with the words of the trust instru-

ment, and to locate the Home in Ohio is entirely in accord with that instrument. If it be argued that to locate the Home outside of Ohio would also be in accord with the words of the trust instrument—then would not a question of fact arise? It is to be constantly borne in mind that the question is whether the charity complies with the statutory requirement; that requirement, the one with which we are now concerned, is:

"public charity, **carried on** in whole or substantial part **within this state.**"

The statute is concerned with **the fact** of where the charity is to be carried on.

If under a trust instrument, it were possbile for a trustee, at its sole option, to carry on a public charity, therein created, either in Ohio or California, is it to be held that such trust fund is subject to an inheritance tax, because it might have been theoretically possible to carry on the charity in California, although in truth and in fact it will be carried on in Ohio, and the trustee has exercised its option so to do? Remembering, again, that the statute is concerned with **the facts as they are and are to be,** and not with a permissible but discarded possibility, why may not such facts be shown by parol testimony? But—it might be argued—that in spite of the declaration of intention on the part of the trustee to locate the Home in Franklin County, said trustee might, if said estate were on such theory held to be exempt from the inheritance tax, after the estate was settled, revoke the former resolution and pass another determining to locate the charity in another state. The answer to that, we think, would be, aside from the consideration of honor, that we are living in an actual and not a theoretical or dream world. It would not be feasible or practical for the reasons named in the resolution already adopted to take any such action. Moreover, having filed such a declaration in this proceeding for the determination of the inheritance tax, it would be judicially estopped from taking any such contrary action. All this immediately preceding discussion is devoted to a situation where the trust instrument left the subject of location solely to the choice of the trustee. In the instant case we are not of the opinion that such situation exists; rather we are of the opinion, as earlier stated, that by implication, the testator has evinced an intention that the Home be located in Ohio, and that such intention is controlling on the trustee. We are clearly of the opinion that the charity so established complies with the statute granting

302

exemption in so far as the location where said charity is to be carried on is concerned.

3. That the administration is to be solely at the discretion of the Trustee.

If the Trustee was sole judge as to the persons qualified and entitled to have the benefits of the fund, then the succession would not be exempt from the tax; it was so held in **Tax Commission v Paxon, 118 Oh St, 36,** and In re Estate of **Warren S. Hayden, 5 O O, 317.** Here, however, the will specified, and does not leave to the Trustee, the qualifications of persons entitled to the benefits of the fund. It does so in the following language:

"To establish and build and support a home for children, who are orphaned, or without the care and support of parents."

Moreover, the administration by the Trustee is to be "under the guidance and direction of an advisory board of five persons", etc. But the qualifications of persons entitled to the benefits of the trust are specifically stated and left neither to the discretion of the Trustee or such Board.

4. That the Trustee might use only a small per cent of the bequest to establish an institution and invest the balance to make money over a long period of years.

This objection is undoubtedly suggested by the ruling in **Tax Commission v Bank & Trust Co., 117 Oh St, 443,** where it was held that,

"The provision of §5334 GC, 'The succession to any property passing * * * to or for the use of an institution for purposes only of public charity * * * shall not be subject to the preceding sections of this subdivision', does not apply to the succession of property to be used for a period of not less than fifty nor more than sixty years exclusively for profit and the multiplication of profits, even though such property and its accumulations is thereafter to be dispensed as a public charity, the purpose of the testator being not alone to dispense a public charity, but also to increase and augment the estate he has left."

The language of the will in this particular is as follows:

"I advise and direct that the establishment and erection of said Home **be made as soon as practically possible,** but in a conservative manner with a view to serving the present demand for such service, and with a view to extending and

expanding the same as the demand for such service increases, and that in the meantime the property coming to said Trustee hereunder be managed for the production and accumulation of income. That any real estate passing under this devise considered by the Trustee not desirable to be retained for income be sold, and that all funds and personal property not used in the establishment and erection of said Home be invested in good, safe, tax free, income producing securities and used as it may be needed in extending and expanding said Home and the operation of the same, and the surplus thereof to be invested as an endowment thereof."

And the sixth item of the will hereinbefore substantially quoted, provides for an alternative disposition of the income to an institution already organized, but for the same uses and purposes, his reason being as stated:

"So that said trust funds shall not be tied up a long time or indefinitely in inactivity, and subject to expenses and charges without accomplishing the objects set forth herein."

Here, then, is no withholding of the trust funds for fifty or sixty years, nor does such language suggest that the purpose of the testator, is "not alone to dispense a public charity but also to increase and augment the estate he has left" as found to be the situation in Tax Commission v Security Savings Bank & Trust Co., Trustee, supra. We do not believe that the principle of that case is applicable here. It might be added, in this connection, that no such charity could exist or be carried on, as a practical matter, if the whole fund was immediately expended in the erection of such a Home and no provision was made for its operation and continued operation after it was built. Considering the testator's entire language in this connection, we do not think that he has deferred the use of said fund for charitable purposes, but has, rather, immediately dedicated the entire fund for such purposes, and for such purposes only.

4. That some of the benefits are the distribution of flowers not only in Ohio but to numerous places outside of Ohio.

The distribution of flowers is incidental only to the main trust, and we have already called attention to the fact that the statute does not require the benefits of such charity to be carried on exclusively in Ohio, but only in substantial part. Even if the "distribution of flowers" part of the will were

looked to alone, it will be seen that a most substantial portion of such flowers are to be distributed in Ohio.

5. That the charity is limited and is not a general charity in that the benefits and the training shall be based upon the practical teachings and principles of Jesus Christ and that their training should be such as received in an American Christian home.

It is contended that Jews, Mohammedans, Atheists, Buddhists and other people who believe in other religions are excluded from being beneficiaries.

The relevant language of the will in its entirety in this connection, is:

"To establish and build and support a home for children who are orphaned, or without the care and support of parents * * in which such children will receive sustenance and support and be educated and trained in industry, economy, thrift, self-support, independence, helpfulness and good citizenship such as they should receive in a good American Christian home, as nearly as possible in the absence of good parents. I advise and direct that such home be located and established in a rural section where the children shall have the healthful benefits of outdoor life, and be educated and trained in the basic industry of productive agriculture as the basis for their future work and life, whatever life work they may after their maturity decide to engage in. * * * *

"I desire and direct that the Spiritual Education and training of such children as may receive the benefits of said home, shall be based upon the practical teachings and principles of Jesus Christ, but without the theological dogmas and discussions frequently attached thereto."

The relevant provision of the statute is that the charity must be a "public charity". Does the charity so established constitute a public charity?

It was held in **Morning Star Lodge, No. 26, I. O. O. F., v Payslip, treas., 25 Oh St, 144,** that,

"A charitable or benevolent association which extends relief only to its own sick and needy members, and to the widows and orphans of its deceased members, is not 'an institution of purely public charity'."

In **Tax Commission v Bank & Trust Co., 117 Oh St, 443,** it was held that,

"The succession of property to a trustee to be used for the purpose of dispensing charity only to aged Master Masons, their wives, widows and dependent orphans, or superannuated clergymen, is not a succession of property 'for purposes only of public charity'."

In the case of **In Re Estate of Taylor, 139 Oh St, 417,** the Supreme Court of Ohio in a four to three decision held that a bequest to the American Bible Society was not exempt because said society was engaged in the propagation of a **branch** of the Christian religion. The reasoning of the Court is expressed in the following quoted paragraphs from the opinion, page 420:

"Whether appellant is a charitable institution is not controlling. The question here is whether it is an institution for purposes **only** of **public** charity. While it may circulate its Bibles freely, yet it is circulating the King James Version thereof, which is used only by a part of the people. It is argued that these Bibles are furnished to persons irrespective of creed. Granting this, the appellant then is engaged in the propagation of a branch of the Christian religion."

This decision was rendered March 25, 1942. It was followed by an amendment to the statute, §5334 **GC,** including within the exemptions from the inheritance tax, "an institution or organization not for profit and for the exclusive purposes of printing and distributing the Holy Bible"; said amendment becoming effective August 19, 1943.

In the case of **In Re Estate of Lambert, 69 Oh Ap, 522,** it was held by the Court of Appeals of our own District that,

"A theological seminary, operated by a church of a particular denomination, founded on the creed of the denomination, and maintained by endowments, small incidental fees to students and contributions from such church, in which the subjects taught are essentially religious in character and the purpose of which is to prepare its students for the ministry in that denomination, but which accepts students and employs teachers regardless of denomination, is 'an institution for purposes only of public charity' within the meaning of §5334 **GC,** granting exemptions from taxation on successions to or for the use of such institutions."

The Court cited and ruled upon **Little v Seminary, 72 Oh St, 417,** and **Gerke v Purcell, 25 Oh St, 229.**

The essential features of a public charity are that it is not confined to privileged individuals, but is open to the indefinite public, and it is this indefinite or unrestricted quality that gives it its public character. Appeal of Donohugh, 86 Pa., 306, 318; Doyle v Whalen, 87 Me., 414; City of Bangor v Rising Virtue Lodge, 73 Me. 428.

"A charity may restrict its admissions to a class of humanity and still be public. It may be for the blind, for the mute, for those suffering under special diseases, for the aged, for infants, for women, for men, or for different callings or trades by which humanity earns its bread, and so long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public." 10 Am. Jur. 588.

Who are the eligible for admission to the proposed home? The will answers this question in the following language:

"Children, who are orphaned, or without the care and support of parents."

This language—and there is no other language in the will relative to who are eligible to be received in the projected home—does not limit the beneficiaries to members of any particular religion, nor are persons having no religion barred. After they are received, by the terms of the will, such children will "receive sustenance and support, and be educated and trained in industry, economy, thrift, self-support, independence, helpfulness and good citizenship, such as they should receive in a good American Christian home, as nearly as possible in the absence of good parents."

This particular part of the language of the will has no reference to Christian training, but to such training in industry, economy, thrift, etc., as they should receive in a good American Christian home. There is, therefore, no religious limitations, in the foregoing language of the will.

The will also contains the following paragraph:

"I desire and direct that the spiritual education and training of such children as may receive the benefits of said home, shall be based upon the practical teachings and principles of Jesus Christ, but without the theological dogmas and discussions too frequently attached thereto."

As we have already seen, **any** child who is "orphaned" or who is "without the care and support of parents" is eligible to be received. No child could be rejected because of his religious affiliation or beliefs or lack of religious affiliation or beliefs. Could it be said, however, that while all such children are eligible, so far as the terms of eligibility on the part of the trust are concerned, that persons of certain religious beliefs or of no belief would be barred from **accepting** such charity? Of course orphans or the persons or authorities having charge of orphans might, being free persons, decline to accept the benefits of such charity, for any reason whatever or for no reason. This, however, would not change the terms of eligibility set forth in the will: "Children who are orphaned or without the care and support of parents."

It is argued, however, that in practical effect, the provision of the will which directs that the spiritual education and training of such children "shall be based upon the practical teachings and principles of Jesus Christ, but without the theological dogmas and discussions too frequently attached thereto" would exclude "Jews, Mohammedans, Atheists, Buddhists and other people who believe in other religions, who, under the Constitution may worship freely as their conscience dictates, from being beneficiaries". We are of opinion that this argument overlooks or fails to take into proper consideration, the concluding and limiting language of the testator's direction in this regard: "but **without the theological dogmas** and discussions too frequently attached thereto."

That Jesus Christ was a great teacher and that his **practical** teachings and the principles by which he lived are of universal application, is accepted by all men regardless of religious belief, or lack of belief. It is upon "theological dogmas" that the various religions differ. There is clearly nothing in the language of the will which prescribes any religious qualifications in prescribing **eligibility** to be a beneficiary of the charity in question, and nothing therein which would exclude any one, by reason of any religious affiliation or lack of affiliation from **accepting** such charity.

6. That the Trustee is authorized as an alternative, because of shrinkage, etc., to consider the Methodist Children's Home of Columbus, Ohio.

If the alternative should be resorted to it is sufficient to point out that the **service** thereof is to be the same as outlined and directed by the testator if the new home were

308

erected; this being so, what has already been said would be equally applicable in such event.

The second assignment of error in said exceptions is overruled. Exceptions overruled. Exceptions.